**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2006
Decided September 11, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3734

| | |
|---|---|
| OSCAR G. SANTOS,<br>     *Petitioner*, | On Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No. A72 511 104 |
| ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>     *Respondent*. | |

**O R D E R**

Oscar Santos, a native and citizen of Guatemala, petitioned for asylum and withholding of removal, claiming persecution because he was "threatened to death by leftist guerillas." An immigration judge denied Santos's petition and the Board of Immigration Appeals affirmed. Rather than petitioning for review of the BIA's decision, Santos filed a motion to reopen, which the BIA denied. Santos now petitions for review of that denial. Because Santos failed to present new and material evidence, we deny the petition.

At his asylum hearing, Santos testified that he fled to the United States in December 1991 after several encounters with guerillas in Guatemala. Specifically,

Santos said that sometime around 1991 guerillas threatened to kill him if he did not "go and work with them." Shortly thereafter, while Santos and his cousin were returning home from a cantina in a nearby village, "[t]wo people came out of the forest" who Santos "knew" were guerillas and shot his cousin in the head. Santos ran away, and the assassins threatened him with death if he told anyone about the shooting. Santos also reported that on another occasion, while returning home after dark, his arm was cut with a knife by people whom he believed were guerillas, but he "did not know who they were because it was at night." Also in apparent reference to the guerillas, Santos stated further that "they" killed his cousin's son, who was found dead sometime around 1991.

Santos also testified to more recent attacks against family members in Guatemala that he said were perpetrated by guerillas. In 2000, his brother was shot in the stomach; Santos testified that guerillas did it and that they may have mistaken his brother for himself. In 2002, the son and grandson of the cousin who was shot in front of Santos in 1991 were killed—assassinations that Santos said "could be related with the guerillas." Santos told the IJ that if he went back to Guatemala his life would be threatened because the guerillas who "asked [him] to join them" are "not dead yet."

The IJ denied Santos's petition, finding that he did not suffer past persecution because, although his testimony was credible, his story was too general and he was never personally harmed by the guerillas. The IJ acknowledged that Guatemala endured a period of civil strife in the early 1990s, but concluded that "aliens fleeing general conditions of violence" do not qualify for asylum. The IJ further determined that Santos had no fear of future persecution because, since his encounters with the guerillas in the early 1990s, U.S. State Department Country Reports show that Guatemalan guerillas have renounced violence and are participating in the political process. The BIA summarily affirmed the IJ's order.

Santos did not appeal that order, and instead three months later filed with the BIA a motion to reopen proceedings based on new evidence—four affidavits and a new country report—that he believed substantiated his fear of persecution. Santos offered his own affidavit, the affidavit of his mother-in-law who resides in Guatemala, the affidavit of his wife's granddaughter who resides in Guatemala, and the affidavit of another Guatemalan resident—all bearing the same date, December 23, 2004—which state in similarly general terms that Santos has enemies in Guatemala. For instance, Santos asserts in his affidavit that while his appeal was pending with the BIA, he contacted his mother-in-law and his wife's granddaughter who live in his house in Guatemala, and they told him that he "still [has] enemies" in Guatemala and that it would be unsafe for him to return. His mother-in-law asserts that "for a

long time I have known Mr. OSCAR GARCIA SANTOS and that all the enemies that he has are still residing in the same place." His wife's granddaughter asserts that "since I was a little girls [sic] I have known Mr. OSCAR GARCIA SANTOS. Being a good and honorable person and a very hard working person, reason why I give faith over him and stay [sic] that all the enemies of his family are still residing in the same place." The affidavit of Rosemary Hernandez Barrientos—identified by Santos only as "another person" residing in Guatemala—states that "since I was a little girls [sic] I have known Mr. OSCAR GARCIA SANTOS. And say that He had his enemies and that they are still residing in the same place."

Besides the four affidavits, Santos also presented the 2003 U.S. State Department Report on Guatemala, which issued after his 2003 asylum hearing. He argued that the report as a whole reveals "that the situation in Guatemala is even more unstable," and he points to statements in the report that politically-motivated killings were carried out by nonstate actors, and that attempts to exhume secret mass graves were accompanied by death threats. Santos did not explain how this information specifically related to his circumstances.

The BIA denied the motion to reopen because Santos "failed to submit previously unavailable evidence which would alter the outcome of this case, or evidence of changed conditions in Guatemala which would materially affect his persecution claim." Santos filed a timely petition for review in the Ninth Circuit and the case was later transferred to this Court.

In his petition for review, Santos argues that the BIA abused its discretion when it found that he did not submit previously unavailable evidence or evidence of changed conditions in Guatemala. Specifically, he argues that the affidavits he submitted "should not be considered as previously unattainable" because they were "procured *after*" his asylum hearing. Moreover, Santos argues, he presented a "new country report"—released after his hearing—which shows that "Guatemala is still unsafe and Guerilla[ ] forces or sympathizers are still acting there."

Motions to reopen are "strongly disfavored," and this court reviews the BIA's denial of a motion to reopen for an abuse of discretion. *Selimi v. Ashcroft,* 360 F.3d 736, 739 (7th Cir. 2004). "A motion to reopen seeks fresh consideration on the basis of newly discovered facts or a change in circumstances since the hearing," *Fessehaye v. Gonzales*, 414 F.3d 746, 753 (7th Cir. 2005) (internal citation omitted), and should be granted only if the alien presents evidence that is material and was not available at the hearing before the IJ or could not have been discovered earlier by the exercise of due diligence. 8 C.F.R. § 1003.2(c)(1); *Bao Hua Lin v. Gonzales,* 435 F.3d 708, 710

(7th Cir. 2006); *Simtion v. Ashcroft*, 393 F.3d 733, 737 (7th Cir. 2004); *Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002).

Santos's argument must fail because he makes no attempt to explain why either his own affidavit or the three affidavits executed by persons residing in Guatemala could not have been submitted earlier. *See Krougliak,* 289 F.3d at 459-60 (upholding BIA's denial of a motion to reopen based on new evidence—specifically, a letter allegedly from a Ukranian government official claiming continued persecution of Greek Catholics in Ukraine—because the evidence was in existence at the time of his hearing). Moreover, the affidavits do not allege newly discovered facts or a change in circumstances since Santos's hearing. To the contrary, the affidavits generally state that Santos still has enemies in Guatemala, an argument he made at his hearing. *Cf., Fessehaye,* 414 F.3d at 754-55 (reopening justified where aliens's affidavit alleged new facts—that she had converted to the Jehovah's Witness religion after her hearing and that the Eritrean government had a pattern and practice of persecuting that group).

Santos also fails to explain how the 2003 U.S. State Department's Report on Guatemala reflects changed conditions that impact his particular situation. He merely argues that the 2003 report shows that conditions have worsened in Guatemala due to politically motivated killings by nonstate actors, the government's inability to control and investigate crime, the killing of a human rights activist, and death threats accompanying efforts to exhume secret mass graves. However, Santos does not specify how any of these factors relate to his claim that his life will be threatened by leftist guerillas if he returns to Guatemala. *See Awad v. Ashcroft*, 328 F.3d 336, 342 (7th Cir. 2003) (State Department report unhelpful to petitioner's case because it did "not set forth specific detailed facts" explaining why she was "likely to be singled out for persecution").

For the foregoing reasons, the petition for review is DENIED.