# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2446

RADUCU SIMTION,

*Petitioner,*

*v.*

JOHN ASHCROFT,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A72-122-340

ARGUED AUGUST 3, 2004—DECIDED DECEMBER 29, 2004

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* After weaving a procedural web that dates back to 1992, Raducu Simtion now seeks review of an August 2002 decision of the Board of Immigration Appeals ("BIA"). But we lack jurisdiction to review that decision because Simtion did not timely file his petition for review. Instead, he filed with the BIA a "motion to reopen," which the BIA denied in April 2003. Simtion's May 2003 petition for review is timely to challenge only the BIA's refusal to reopen. To the extent Simtion is seeking untimely review of the August 2002 decision, we dismiss his petition, and to the extent Simtion is seeking review of his motion to reopen, we deny the petition.

Simtion, a native of Romania, entered the United States in June 1992 as a nonimmigrant visitor for pleasure. He was authorized to remain in the United States until December 1992, but he overstayed his visa. Simtion initially applied for political asylum in February 1993. We assume he was denied relief, but the record contains no details. The INS commenced deportation proceedings against Simtion in November 1993, and in February 1994 he conceded removability and obtained a continuance to prepare a second asylum application.

Simtion testified that if he returned to his native country he would be persecuted based on his Pentecostal religion and anti-communist political opinion. He testified that between 1978 and 1990 he was arrested seven times: five times on the basis of his religion, once for attempting to leave the country, and once for taking part in the revolution in Romania to overthrow Nikolae Ceausescu. Each detention lasted from a week to a month. Simtion provided limited details about the detentions, offering that he had been denied food and water, he had been beaten with a rubber stick, and he had been pressured to give up his religion.

In April 1995, the Immigration Judge ("IJ") denied Simtion relief, saying: "the respondent's testimony was incredible and unpersuasive; it was general and vague. The respondent failed to set forth the kind and degree of specificity that can support a credible and persuasive asylum application." On the issue of past persecution, the IJ reasoned that Simtion had not provided sufficient testimony to establish that the beatings he endured were sufficiently severe—he had not offered any evidence that he was injured, that he required medical care, or that "his lifestyle was altered in any way." The IJ noted specifically that Simtion had continued to work at a state-controlled factory until he left Romania. In addition, the IJ concluded that Simtion had not established that his arrests were prompted by his faith. (The IJ did not say whether he thought the arrests were prompted

by political opinion.) Furthermore, explained the IJ, even if Simtion had established past persecution, the State Department reported in 1994 that "current country conditions have so altered in the nearly five years since the overthrow of communism as to remove any presumption that past mistreatment under Ceausescu or in the chaotic first year after his death will lead to mistreatment in the future." *See* U.S. Dep't of State, Romania: Profile of Asylum Claims and Country Conditions (May 1994). And, the IJ added, Simtion had not otherwise established a reasonable fear of future persecution: "[T]he respondent has not shown that any adverse action has taken place since his departure. He did not suggest that he is sought by any government official, that he any [sic] of his 'brothers' or political allies have experienced any adverse treatment, or that the current Romanian officials would not or could not protect his interests."

Simtion appealed to the BIA, but in September 1996 before the BIA had entered a decision, Simtion moved for a remand so that he could apply to adjust his status based on his marriage to a U.S. citizen. The BIA remanded the record to the IJ to allow Simtion the opportunity to establish his eligibility for adjustment.

The ensuing details of Simtion's pursuit to adjust his status are not ultimately relevant here because Simtion did not timely petition this court for review of the IJ's denial of his motion. The IJ denied the motion because Simtion had twice failed to appear at scheduled hearings on his motion. The Board affirmed the IJ's denial, and in the same decision turned to Simtion's appeal of his asylum petition, which had been on hold for seven years. The Board said: "We affirm that portion of the Immigration Judge's decision which found that the respondent had failed to meet his burden of proof due to changed country conditions in Romania arising after the respondent's 1992 departure from that country."

Simtion did not file in this court a timely petition for review of the August 2002 BIA decision affirming the IJ's denial of his motions to adjust status and denial of his asylum petition. Instead, Simtion filed with the BIA a pleading he titled a "motion to reopen," focusing entirely on the BIA's affirmance of the IJ's April 1995 denial of asylum. In it he did not include *any mention* of his attempt to adjust his status, so we lack jurisdiction to review whether Simtion should be granted another chance to adjust his status. *See Tittjung v. Reno*, 199 F.3d 393, 397 (7th Cir. 2000) (review of motion to reopen or reconsider confined to issues raised in that motion.) In his motion Simtion instead argued that country conditions had changed since the IJ's 1995 order denying him asylum; he contended that because the 2000 election "brought former communist secretary, Ion Iliescu, back to power," his fears of persecution were realistic again. Simtion attached to his motion the State Department's Country Report on Human Rights Practices for 2001 for Romania, The State Department's 2001 Annual Report on Religious Freedom in Romania, and several articles.

The BIA thought that Simtion's motion was more properly characterized as a motion to reconsider, but it analyzed the motion under both standards. The BIA said that to the extent that Simtion was seeking reconsideration, he failed to point to any errors of law or fact to justify relief. And to the extent that he was seeking to reopen his proceedings, his motion was barred because he had previously filed a motion to reopen, and he could not claim the benefit of an exception allowing an applicant to reapply for asylum based on new evidence of changed country conditions. The BIA said that in August 2002 when it affirmed the IJ's denial of asylum, it had already considered all of the changed country conditions that Simtion was raising in his motion.

The matter before us is limited to the BIA's denial of Simtion's "motion to reopen." *See Sankarapillai v. Ashcroft*, 330 F.3d 1004, 1005-06 (7th Cir. 2003) (time limit for filing

petition for review is jurisdictional). The BIA thought it was really a motion to reconsider, but then analyzed it under both standards. The two motions are described at 8 C.F.R. § 1003.2. A motion to reconsider should specify "errors of fact or law in the prior Board decision." 8 C.F.R. § 1003.2(b); *see also Ahmed v. Ashcroft*, 388 F.3d 247, 249-50 (7th Cir. 2004). A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted." 8 C.F.R. § 1003.2(c); *Ahmed*, 388 F.3d at 250. Motions to reopen must be accompanied by an appropriate application for relief and all supporting documentation. In his motion Simtion did claim that the BIA erred in affirming the IJ's denial of asylum, but his argument relied entirely on evidence of changed country conditions. He did not include a new petition for asylum, but he attached documentation to support his claim that the country conditions in Romania had changed. Because his entire argument was based on new information and his claim was that the new information showed his eligibility for asylum, Simtion's motion seems to be most properly characterized as he titled it, a motion to reopen.

The BIA ruled that if Simtion was seeking to have the asylum proceeding reopened, he would be "barred by the numerical limitations [sic] on motions." An alien "may only file one motion to reopen removal proceedings (whether before the Board or the Immigration Judge)," *see* 8 C.F.R. § 1003.2(c)(2); *see also Joshi v. Ashcroft*, 2004 WL 2633297, No. 02-3592 (7th Cir. Nov. 19, 2004), and Simtion had ostensibly moved to reopen his deportation proceedings already. But although Simtion had previously filed a document with the BIA titled a "motion to reopen," after he missed his first adjustment of status hearing, it is not clear that his deportation hearings had ever been "closed" such that they could be "reopened." Indeed the regulation governing motions to reopen and reconsider says: "A motion to reopen a decision rendered by an Immigration Judge . . . that is filed

while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the Immigration Judge . . . from whose decision the appeal was taken." *Id.* § 1003.2(c)(4); *In re L-V-K*, 22 I. & N. Dec. 976, 979 (1999). It appears that Simtion had only filed motions to remand before, but had never filed a true motion to reopen. So the BIA's determination that Simtion was barred by the numerical limitation on motions appears to be incorrect.

Still, Simtion was not entitled to have his motion granted. All motions to reopen must be based on evidence that "could not have been discovered or presented at the former hearing." *Id.* § 1003.2(c)(1). Simtion's purportedly new evidence of "changed country conditions" involved the elections in 2000 that put President Ion Iliescu in power. He could have brought up those changes at some point between the 2000 elections and the BIA's August 2002 affirmance of the IJ's denial of asylum. *Cf. Petrovic v. I.N.S.*, 198 F.3d 1034, 1038 (7th Cir. 2000) (BIA may take administrative notice of changed country conditions); *Balogun v. Ashcroft*, No. 02-4248, 2004 WL 1469402 (7th Cir. July 1, 2004) (suggesting that petitioner may supplement the record when an appeal is pending before the BIA). Furthermore, Iliescu was not a new figure on the Romanian political scene when he came to power in 2000. He had become the leader of Romania immediately following the Revolution, and he served as its first elected president until 1996. So he *was* the leader of Romania when Simtion applied for asylum in 1994 and was denied it in 1995. Simtion did not explain in his motion to reopen why Iliescu's return to power created different conditions in Romania from the ones existing when he originally applied for asylum. Furthermore, Simtion's supporting documentation said that conditions in Romania were improving, although religious minorities still faced some discrimination at the local level.

We therefore DISMISS Simtion's petition to the extent he is seeking review of the August 2002 BIA decision and DENY his petition to the extent he is challenging the denial of the motion to reopen.


A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*