In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2398

BIN ZHAO,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A77-340-381

SUBMITTED DECEMBER 6, 2005[Œ]—DECIDED DECEMBER 13, 2005
PUBLISHED MARCH 8, 2006[ŒŒ]

Before BAUER, COFFEY, and EVANS, *Circuit Judges.*

PER CURIAM. Chinese citizen Bin Zhao wants to re-
open his application for asylum, which was based on a
fear that he will be persecuted by Chinese police for

---

[Œ] On November 30, 2005, we granted Zhao's motion to waive
oral argument. This appeal is submitted on the briefs and the
record. *See* Fed. R. App. P. 34(f); Cir. R. 34(e).

[ŒŒ] This opinion was originally issued as an unpublished order on
December 13, 2005. Upon request, the panel has determined that
this decision should now issue as a published opinion.

attending a Falun Gong rally in 1999. Because he waited two years after the BIA denied his claim to file his motion to reopen, the BIA denied it as untimely. Even though his motion was filed past the deadline, Zhao maintains that he satisfied a statutory exception to that deadline by presenting evidence of changed circumstances in China— specifically, an affidavit by his girlfriend (he says wife) stating that Zhao's parents in China "recently" said that police are looking for him because he attended the rally. Because evidence that police are *still* looking for Zhao is not *changed* circumstances, the BIA did not abuse its discretion. We deny Zhao's petition for review.

Zhao is a twenty-four-year-old citizen of the People's Republic of China (from Fujian Province) who came to the United States in early 2001. He applied for asylum based on his parents' affiliation with Falun Gong. Before an IJ, he testified that he personally knew nothing about Falun Gong but attended a rally of two or three hundred Falun Gong members in Fuzhou during 1999. The police broke up the rally, he said, so he and his parents ran away. His parents ran home, but he fled to his uncle's house, where he stayed for seven or eight months until coming to the United States. His parents, with whom he stayed in contact, were never troubled further by police but, a week before his hearing, they told Zhao on the phone that police were still looking for him. The IJ decided that Zhao was lying and denied relief. The BIA summarily affirmed in January 2003. Zhao never sought review.

In February 2005, Zhao moved to reopen his case. He conceded that his motion did not meet the agency's deadline of 90 days after the final decision, but he argued that he had evidence of "changed circumstances" in the "country of nationality" that exempted his motion from the deadline. He did not present his own affidavit and an application for asylum or other relief as he was supposed to, but he did submit an affidavit by a woman he calls his "common-law

wife." Her affidavit says that his parents "recently" told him that the police were still looking for Zhao. It also says that she and Zhao are about to have a second child, which will subject them to persecution under China's one-child policy. Apparently, he believed that terming her his "common-law wife" would strengthen his own claim for asylum based on the birth of children in the United States.

The BIA denied Zhao's motion as untimely, reasoning that he "failed to show that changed circumstances exist" to warrant an exception from the 90-day deadline. Although the BIA's order does not explicitly mention the girlfriend's affidavit, it acknowledges Zhao's allegation that his parents told him by telephone that police are once again looking for him for his participation in the 1999 rally. The BIA declined to reopen for the same reasons it denied his original claim. In a footnote, the Board criticized Zhao's failure to include his application or supporting affidavit as regulations require, *see* 8 C.F.R. § 1003.2(c)(1). The BIA also decided that birth of children in the United States is merely a change in personal circumstances, not a change in country conditions in China to warrant the exception. In any event, the BIA explained that Zhao had not shown that he was legally married to his "common-law wife" and thus he could not avail himself of asylum on account of China's family planning policy.

In his petition, Zhao does not dispute that his motion to reopen was filed after expiration of the 90-day deadline, *see* 8 U.S.C. § 1229a(c)(7)(C)(i) (formerly § 1229a(c)(6) (C)(i)); 8 C.F.R. § 1003.2(c)(2), but he argues that the BIA erred in determining that he did not meet the statutory exception for changed circumstances in China, *see* 8 U.S.C. § 1229a(c)(7)(C)(ii) (formerly § 1229a(c)(6)(C)(ii)); 8 C.F.R. § 1003.2(c)(3)(ii). He explains that the BIA must have overlooked his evidence because its order did not mention his so-called wife's affidavit—which says that Zhao's parents "recently" told the couple that there is a new

"crackdown" and the police are again looking for him because of the 1999 rally—and the order criticized him for failing to produce supporting affidavits.

A motion to reopen based on changed conditions in the country of nationality or removal is exempt from the 90-day deadline, so long as the evidence is material and could not have been adduced at the proceeding to be reopened. 8 U.S.C. § 1229a(c)(7)(C)(ii) (formerly § 1229a(c)(6)(C)(ii)); 8 C.F.R. § 1003.2(c)(3)(ii); *see Simtion v. Ashcroft*, 393 F.3d 733, 736-37 (7th Cir. 2004). Even so, cumulative evidence that conditions asserted in the original application "persisted" is not evidence of changed circumstances, *Betouche v. Ashcroft*, 357 F.3d 147, 152 (1st Cir. 2004). Without a material change, an applicant cannot relitigate his claim. *Betouche*, 357 F.3d at 152; *In re J-J-*, 21 I. & N. Dec. 976, 980-82 (BIA 1997); *see Simtion*, 393 F.3d at 737; *Dandan v. Ashcroft*, 339 F.3d 567, 576 (7th Cir. 2003). Any other holding would draw out the proceedings forever. *See Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (citing *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981) (per curiam)).

The BIA correctly concluded that Zhao's allegation that police were still looking for him did not constitute changed circumstances. At best this new "evidence" is cumulative and merely an assertion that the same conditions "persisted," *see Betouche*, 357 F.3d at 152. Although Zhao hints that the Chinese government has intensified its persecution of the Falun Gong, the affidavit does not support that implication. All Zhao can say is that "*something* indeed has changed" (emphasis in original); he cannot even say what. There is no evidence of a material change, so even if the BIA did overlook the affidavit, the oversight could not possibly matter. The BIA did not abuse its discretion in rejecting this untimely motion.

Last, although Zhao no longer seeks relief based on the birth of his children in the United States, such evidence

cannot justify the relevant statutory exception. The statute applies only when there are changed conditions "arising in the country of nationality or the country to which removal has been ordered," 8 U.S.C. § 1229a(c)(7) (C)(ii) (formerly § 1229a(c)(6)(C)(ii)). By contrast, the birth of Zhao's children is merely a change in "personal circumstances" in this country. *See Zheng v. U.S. Dep't of Justice*, 416 F.3d 129, 130-31 (2d Cir. 2005) (per curiam); *Guan v. BIA*, 345 F.3d 47, 49 (2d Cir. 2003) (per curiam).

The petition is

DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*