NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted February 14, 2007[*]
Decided February 14, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2648

| | |
|---|---|
| YAN ZHEN YANG,<br>          *Petitioner-Appellant,* | Petition for Review of a Decision of<br>the Board of Immigration Appeals |
| *v.* | No. A77-340-208 |
| ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>          *Respondent-Appellee.* | |

**O R D E R**

Yan Zhen Yang, a native and citizen of China, entered the United States in November 2000 without valid travel documents.  The following month, she was served with a Notice to Appear charging her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Yang sought and was granted numerous continuances so she

---

[*]We granted the appellant's motion to waive oral argument.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(f).

could hire an attorney. In February 2001, she was found removable at a hearing before an immigration judge in California, and she applied for asylum, withholding of removal, and protection under the Convention Against Torture. Yang premised her claims on a fear of persecution based on her Christian religion and her opposition to China's family planning policies. At the time, she was unmarried and had no children, but she stated that she feared she would be subject to forced abortion and sterilization if she married and had children in the future. Before a hearing on the merits of her applications could be held, Yang moved to New York, and later to Indiana. She also met and married another Chinese citizen. Her asylum hearing was postponed yet again due to her pregnancy; in February 2004, she gave birth to the couple's first child, a son.

Yang's hearing was finally held in July 2004. She testified primarily about her fear of persecution on account of her Christian beliefs, although she added that her mother was sterilized after having five children and she feared the same thing could happen to her. The IJ denied all forms of relief, and Yang appealed. The Board of Immigration Appeals summarily affirmed the IJ's decision. Yang did not file a petition for review, but more than seven months later, in March 2006, she moved to reopen. Although the motion was untimely, she argued that evidence of changed conditions in China nevertheless warranted reopening, *see* 8 C.F.R. § 1003.2(c)(3)(ii). Yang asserted that conditions in China had changed due to the recent enforcement of the People's Family Planning Law (PFPL) in her home province of Fujian. According to Yang, the law increases the punishment for violating the one-child rule from economic sanctions to "more severe criminal charges." Yang, who was pregnant with her second child at the time she filed her motion, argued that she had a well-founded fear of "future birth control persecution." In support of her motion, she submitted numerous documents including the text of the PFPL and a letter from her mother in China describing the increased enforcement of the law, including the forced sterilizations of two neighbors. Yang also relied on a transcript of the 2002 Congressional testimony of the late John Shields Aird, formerly a demographer from the United States Census Bureau, and a generalized affidavit he prepared on behalf of Chinese asylum seekers in 2004. Aird's affidavit focuses on China's policy toward parents of U.S.-born children and suggests that foreign-born children are counted under family planning rules, subjecting the parents to harsh penalties.

The BIA denied Yang's motion. It noted that Yang had supplied "some evidence" of changed country conditions but nevertheless failed to demonstrate prima facie eligibility for asylum to warrant reopening her application. Relying on its recent decision in *In re C-C*, 23 I. & N. Dec. 899 (BIA 2006), the BIA stated that there was no persuasive evidence that Chinese citizens who have children abroad and return to China are forced to undergo sterilization upon their return. In particular, the Board found the State Department reports more persuasive than Dr. Aird's testimony on the subject of forced sterilization because official government

policy prohibits coercion and Aird supplied "no specific evidence that returnees have been subjected to forced surgeries." Acknowledging a likelihood that Yang would face economic sanctions and a possibility that she would be "pressured" to undergo sterilization, the BIA concluded that her evidence did not demonstrate a "realistic chance" that she would be physically forced to submit to sterilization. The BIA concluded, therefore, that even if the motion to reopen established changed circumstances, Yang was not *prima facie* eligible for asylum. Yang seeks review of that decision.

In general an alien may file one motion to reopen within 90 days of the BIA's decision. *See* 8 C.F.R. § 1003.2(c)(2). However, the normal restrictions do not apply if the motion to reopen relies on "changed circumstances arising in the country of nationality." *See id.* § 1003.2(c)(3)(ii). To support reopening on this ground, the alien must provide evidence that is "material and was not available and could not have been discovered or presented at the previous hearing." *Id.* We review the BIA's decision to deny the motion to reopen under a deferential abuse-of-discretion standard. *See Pelinkovic v. Ashcroft*, 366 F.3d 532, 536 (7th Cir. 2004).

Yang concedes that her motion to reopen was untimely but asserts that she can establish a material change in circumstances in China with the evidence she submitted about the PFPL, including Dr. Aird's expert testimony. She further contends that the BIA mischaracterized her argument as a contention that the births of her children constituted changed circumstances. Finally, she argues that she is prima facie eligible for asylum and withholding because she demonstrated a well-founded fear of forcible abortion or sterilization if she is returned to China.

We conclude that the BIA did not abuse its discretion in denying Yang's motion to reopen. First, we are not persuaded that the enactment of the PFPL in 2002 demonstrates that conditions in China have materially changed since Yang was last before the BIA. The law was passed two years before Yang's original asylum hearing, and she did not mention it then. *See Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002) (upholding denial of motion to reopen where evidence "was in existence at the time of [petitioner's] asylum hearing"). She supplies no evidence to support her assertion that local officials began enforcing the law only in the months before she filed her motion in March 2006. Moreover, the PFPL says nothing about sterilization as a method of enforcing population control.

The Aird affidavit likewise does not support the argument that population control measures are more oppressive now. We have held that the affidavit, which relies largely on sources from the 1990s, is not evidence of changed circumstances. *See* [*Bao Hua*] *Lin v. Gonzales*, 435 F.3d 708, 711 (7th Cir. 2006). And, in a case with facts quite similar to those presented here, the Second Circuit noted that the Aird affidavit had limited relevance because it "was not prepared specifically for

petitioner and is not particularized as to his circumstances." *See Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006).

The birth of Yang's children in the United States also does not support the existence of changed circumstances. *See Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2006). We have held that such a change in "personal circumstances" does not trigger the statutory exception for additional, untimely motions to reopen. *Id.* at 407. Yang insists that the births of her children are not a basis for her motion, but this objection rings hollow in light of her contention that, now that she has two children, she "will almost certainly be deemed to have violated the PFPL" and punished for it if returned to China. Asylum is available to those who have a well-founded fear of persecution based on a violation of, or opposition to, China's family planning policies, but "[i]t is quite a different situation . . . where a petitioner is seeking to reopen [her] asylum case due to circumstances, entirely of [her] own making after being ordered to leave the United States." *Wang,* 437 F.3d at 274.

Because we conclude that the denial of the motion to reopen was not an abuse of discretion, Yang's petition for review is DENIED.