NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2007[*]
Decided May 29, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-3342

RADUCU SIMTION,
    *Petitioner,*

    *v.*

ALBERTO GONZALES, Attorney
General of the United States,
    *Respondent.*

Petition for Review of a Decision of
the Board of Immigration Appeals

No. A72-122-340

### O R D E R

After being denied asylum, Romanian-native Raducu Simtion sought to adjust his immigration status based on his marriage to a lawful permanent resident. He failed, however, to attend his adjustment-of-status hearing and was ordered deported *in absentia*. He attempted to rescind the *in absentia* order by motioning to reopen his proceedings, but he failed to attend the motion hearing. Thus, the motion to reopen was denied. Four years later, Simtion tried again: he filed a second motion to reopen, in which he argued that he did not receive notice of

---

[*]This successive appeal has been submitted to the panel that decided the original appeal. See Operating Procedure 6(b). After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

the motion hearing. He now petitions for review of the Board of Immigration Appeals' denial of that motion. We deny the petition.

Simtion entered the United States in 1992 as a nonimmigrant visitor for pleasure. He overstayed his visa and in early 1993 he applied for asylum. In April 1995 an Immigration Judge denied his asylum application and granted him voluntary departure. Simtion appealed the IJ's decision to the BIA.

While his appeal was pending, Simtion filed with the BIA a motion to remand, which was granted, asserting that he was eligible to adjust his status based on his marriage to a lawful permanent resident. In March 1998 the Immigration Court sent Simtion's counsel written notice that his adjustment-of-status hearing would take place on December 10, 1998. Simtion, however, failed to appear at the hearing and the IJ ordered him deported *in absentia.*

In March 1999 Simtion filed a motion with the BIA to rescind the *in absentia* order and reopen his proceedings. The BIA "returned" the case to the IJ to adjudicate this motion. The Immigration Court again sent Simtion's counsel notice, in June 1999, of the date and time of the motion hearing, September 23, 1999 at 9:00 am, and the consequences of failing to appear. Although Simtion's attorney, wife, and children attended the hearing, Simtion again was not present. His attorney informed the IJ that he had told Simtion's wife the court date "some time before Labor Day" and he was thus "at a loss for words" as to why Simtion did not attend. The IJ orally denied Simtion's motion to reopen, and the BIA upheld that decision in an August 2002 order. The BIA found "no basis for remanding this case a third time." The BIA, in the same order, also upheld the dismissal of Simtion's asylum claim.

Simtion's sole response to this order was to file a motion to reopen based on "changed country conditions" so that he could again apply for asylum. The BIA denied the motion, and we denied Simtion's petition for review of that decision. *See Simtion v. Ashcroft,* 393 F.3d 733 (7th Cir. 2004).

Then, in March 2006—six years after he failed to attend the September 1999 motion hearing—Simtion, through new counsel, filed with the BIA a second motion to reopen his proceedings to apply for adjustment of status. In this motion, Simtion argued that he never received notice of the September 1999 hearing and he was thus, according to section 242B of the former Immigration and Nationality Act, entitled to have his proceedings reopened despite the extensive amount of time that had elapsed. *See* 8 U.S.C. § 1252b(c)(3)(B). Contrary to former counsel's explanation to the IJ, Simtion's wife averred that counsel failed to notify her (Simtion does not speak English) about the hearing until the evening before it was scheduled to take place. She went on to explain that with such short notice,

Simtion could not attend the hearing because he was a long haul truck driver who was driving a truck in Pennsylvania that night. (According to Simtion's wife, she and her family had frantically—but to no avail—tried to book Simtion on a flight from Philadelphia to Chicago.) Furthermore, she continued, their former attorney never told her the consequences of failing to appear, which, as the motion set forth, is also an element of notice that must be furnished to an alien. *See* 8 U.S.C. § 1252b(a)(2)(A)(ii).

The BIA denied the motion in an August 2006 order. The BIA concluded that it was "undisputed" that proper notice had been received by Simtion's former counsel and therefore notice to Simtion had not been lacking. The BIA reasoned that Simtion was in essence trying to present an untimely claim of "exceptional circumstances." *See* 8 U.S.C. § 1252b(c)(3)(A). Simtion petitioned for review.

We review the denial of a motion to reopen for abuse of discretion only. *Gomes v. Gonzales*, 473 F.3d 746, 752 (7th Cir. 2007). We will not find that the BIA has abused its discretion unless its decision was made without a rational explanation or inexplicably departed from established policies. *See Mungongo v. Gonzales,* 479 F.3d 531, 534 (7th Cir. 2007).

Simtion argues that the BIA abused its discretion in denying his latest motion to reopen because he did not have notice of the September 1999 hearing—scheduled, as explained above, to determine whether there was an excuse for his absence at the December 1998 hearing where he was ordered deported *in absentia*. Simtion concedes that his former attorney received written notice—in full compliance with the former INA—of the second hearing and that his attorney told his wife the date and time of the hearing at least one day before it was scheduled to take place. Nonetheless, Simtion argues that the BIA should have granted his motion to reopen because, according to Simtion, his attorney never relayed to his wife the consequences of failing to appear. Simtion relies on several cases in which we explained that the relevant question in deciding this type of motion to reopen (from an *in absentia* deportation order) is not whether notice was sent, but whether it was received. *See Sabir v. Gonzales,* 421 F.3d 456, 458-59 (7th Cir. 2005); *Joshi v. Ashcroft,* 389 F.3d 732, 736 (7th Cir. 2004).

We find these cases unavailing, however, because Simtion received notice—according to section 242B—when his counsel received notice. Subsection (a)(2) of that provision provides that notice is received when it is delivered either to the alien or the alien's counsel of record. *See* 8 U.S.C. § 1252b(a)(2)(A). In conjunction, the Act provides that an alien may rescind an *in absentia* deportation order due to lack of notice only "if the alien demonstrates that the alien did not receive notice *in accordance with subsection (a)(2) of this section . . . .*" 8 U.S.C.

§ 1252b(c)(3)(b) (emphasis added). Because Simtion's counsel undisputedly received full and proper notice, Simtion himself, then, received notice "in accordance with subsection (a)(2)." *See id.*; *Perviaz v. Gonzales,* 405 F.3d 488, 490 (7th Cir. 2005); *Scorteanu v. I.N.S.,* 339 F.3d 407, 412 (6th Cir. 2003); *Dobrota v. I.N.S.,* 311 F.3d 1206, 1211 (9th Cir. 2002); *Anin v. Reno,* 188 F.3d 1273, 1277 (11th Cir. 1999) (per curiam). Thus, the BIA's conclusion that Simtion received adequate notice was not an abuse of its discretion. As the BIA correctly noted, the proper recourse in his situation was to file a motion to reopen based on exceptional circumstances, but he neglected to do so within the 180-day prescribed time limit. *See* 8 U.S.C. § 1252b(c)(3)(A); 8 C.F.R. § 3.23(b)(4)(iii)(A); *Uriostegui v. Gonzales,* 415 F.3d 660, 663-64 (7th Cir. 2005).

Simtion makes much of a footnote discussing notice in the BIA's August 2002 order. In that footnote, the BIA noted:

> The record does not contain sufficient evidence to show that the respondent was given oral and written warnings, in a language that he understands, of the consequences of failing to appear at his hearings. Thus, the respondent is not barred by the provisions of section 242B of the Act from having proceedings reopened in order to apply for adjustment of status.

Simtion reads this as a "cue" from the BIA to file the instant motion because it would be granted. He argues that by reversing course in its August 2006 order (the *sole* order now under review), the BIA has abused its discretion.

We interpret this footnote differently. The only "bar" to applying for adjustment of status found in section 242B is that located in subsection (e), which is also the only subsection referring to "oral" warnings; it provides that an alien who has been order deported *in absentia* and who was given oral notice of the consequences of failing to appear for his hearing may not apply for various forms of relief—including adjustment of status—for five years. *See* 8 U.S.C. § 1252b(e)(1). The BIA, it appears, simply pointed out that Simtion was not barred by this provision. Even if we assume that this is correct, it by no means follows that he is necessarily entitled to reopen his proceedings; he still needs to make the showing required by section 242B(c)(3)(B). *See* 8 U.S.C. § 1252b(c)(3)(B); *Lahmidi v. I.N.S.,* 149 F.3d 1011, 1015 (9th Cir. 1998); *Soniregun v. I.N.S.,* 1998 WL 736649, *2 (4th Cir. Oct 19, 1998) (per curiam) (unpublished). And, as explained above, he has failed to make that showing. In any event, it borders on disingenuous for Simtion to contend that he was unaware of the consequences of failing to appear. This was, after all, the second hearing that Simtion had missed. He became intimately familiar with the consequences the first time around: he was ordered deported.

Simtion lastly argues that he has been denied due process. He first contends that learning of his hearing only one day before it was going to take place failed to allow him "a meaningful opportunity to be heard." We have explained that "due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard." *Nazarova v. I.N.S.,* 171 F.3d 478, 482 (7th Cir. 1999). And we review alleged denials of due process *de novo. Hussain v. Gonzales,* 424 F.3d 622, 626 (7th Cir. 2005). But nothing that the IJ or the BIA did caused Simtion not to learn of his hearing sooner—the blame for the purported delay lies with his former counsel—and thus there can be no due process violation. *See Kuschchak v. Ashcroft,* 366 F.3d 597, 603-04 (7th Cir. 2004); *Garcia v. I.N.S.,* 222 F.3d 1208, 1209 -10 (9th Cir. 2000) (per curiam).

Simtion also argues that his due process rights were violated because, according to Simtion, the BIA refused to address in depth the arguments about notice set forth in his motion. Simtion analogizes his case to *Chowdhury v. Ashcroft,* 241 F.3d 848 (7th Cir. 2001), where we held that an alien's due process rights were violated when, in order to apply a procedural bar that would permit the BIA to avoid reaching the merits of the alien's claims, the BIA arbitrarily recast the alien's request for remand into a motion to reopen. *See Chowdhury,* 241 F.3d at 852-54. Simtion contends that here, similarly, the BIA concluded erroneously that his motion was based on a claim of exceptional circumstances and was thus untimely. But the BIA did in fact address Simtion's contentions. Only after the BIA determined that it was "undisputed" that Simtion's attorney had received statutory notice did the BIA go on to note that the motion was untimely to the extent it raised a claim of "exceptional circumstances."

For these reasons, Simtion's petition for review is DENIED.