NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 23, 2008
Decided May 16, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-2688

| | |
|---|---|
| XIU QIN YANG, <br> *Petitioner,* | Petition for Review of an Order of the <br> Board of Immigration Appeals. |
| *v.* | No. A95 461 730 |
| MICHAEL B. MUKASEY, <br> *Respondent.* | |

**O R D E R**

Xiu Qin Yang, a citizen of China, entered the United States without inspection in 1998.  Some four years later she sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT), arguing she would be subjected to forced sterilization upon her return to China because she already had two children.  She was denied relief and granted voluntary departure, which the Board of Immigration Appeals (BIA) affirmed.  Yang, on two separate occasions, moved to reopen her case, but the BIA denied both motions.  Because the BIA did not abuse its discretion in finding that conditions in China had not changed since the BIA affirmed the denial of Yang's initial asylum application, we deny Yang's petition for review.

Yang was born in Fuzhou City in the Fujian Province in 1979. Then 19 years old, she came to the United States in June 1998 to work. Although her testimony at her asylum hearing is not clear, it seems she paid a "snakehead"[1] for documents that were sufficient to allow her to enter the United States undetected. Subsequently, she met and married Chang An Lin, also a Chinese citizen who had been denied asylum but, at the time of their marriage, had been granted voluntary departure. Their first child was born in January 2000, and their second child was born in November 2001.

Five and a half months after their second child was born, Yang applied for asylum, withholding of removal, and protection under CAT. She alleged that she feared that she and her husband would not be allowed to have more children if they returned to China and would be involuntarily sterilized based on the country's family-planning policy. She argued that the one-year limitation for asylum applications should not apply to her because she became subject to the family-planning policy only upon the birth of her second child.

The immigration judge denied Yang's application and granted her voluntary departure. The judge determined that her asylum application had not been timely filed, but went on to conclude that even if it had been timely filed, Yang had not proven that she had a well-founded fear of future persecution. In support of her application, Yang attached State Department reports, a generalized affidavit about the applicability of China's one-child policy to Chinese citizens living abroad from a former demographer for the United States Bureau of the Census, and other evidence regarding the Fujian Province family-planning policy, while the government submitted a summary report of a fact-finding mission to Fuzhou by a Canadian political counselor. This evidence, the immigration judge found, demonstrated that the one-child policy was not enforced as effectively in Fuzhou as in other areas and that more than half of the families in Fujian had two or more children. The judge also determined that while sterilization was encouraged after a family had two children, local officials no longer condoned forced sterilization and abortion. Thus, the judge concluded that the evidence showed that the one-child policy "is not enforced in Fujian Province" and did not support Yang's "self-serving" statement that she would be subjected to forced sterilization. The BIA affirmed this decision in March 2005, and Yang did not seek review.

Yang moved to reopen her case in June 2005, asking the BIA to consider the birth of her third child in January 2004 as new and previously unavailable evidence that would be relevant to her claim that she would be forcibly sterilized upon her return to China. The

---

[1] The term "snakehead" means a paid smuggler. *See Lian v. Ashcroft*, 379 F.3d 457, 458 (7th Cir. 2004).

BIA denied the motion as untimely and because the birth of a child does not constitute changed country circumstances as required for an exception to the time limitation. *See* 8 C.F.R. §§ 1003.2(c)(2), (3)(ii). Yang did not seek review of this decision.

Instead, Yang filed a second motion to reopen along with a successive asylum application in January 2007. This time she argued that number and time limitations for her motion did not apply because conditions in China had changed based on the 2004 and 2005 State Department country reports showing "abuse on a massive scale" in the implementation of the one-child policy. In support of her motion, she submitted an affidavit recounting that her parents had informed her that the government has increased the use of forced abortions and sterilization since 2005, that a classmate and cousin were both forcibly sterilized after having two children, and that village officials knew she had three children. She also submitted State Department country reports for 2004 and 2005, a policy statement from China's Administrative Office of the National Population and Family Planning Committee (NPFPC) issued in 2006, the Changle City Family Planning Q & A Handbook from 1999, the State Department's 2003 Consular Information Sheet, and congressional testimony from both John Aird given in 2002 and Harry Wu, executive director of the Laogai Research Foundation, given in 2004. She also argued that she could file a successive asylum application based solely on changed personal circumstances.

The BIA denied Yang's motion. First, it found that she had not shown that country conditions had changed but rather that the evidence established that the "conditions [were] substantially similar to those that existed at the time of her hearing." The evidence, the BIA reasoned, showed that the government officially prohibited physical coercion to compel people to have abortions or be sterilized and tried to enforce its one-child policy through economic incentives and sanctions, though some local authorities used physical force. The BIA said that no national policy existed in China requiring forced sterilization for parents who return with a second child born outside of China and that the existence of local regulations requiring sterilization in Fujian Province did not reflect that the policy was enforced by physical coercion. Further, it reasoned, though some sanctions might be imposed on Yang, she failed to demonstrate that the sanctions would rise to the level of persecution. The BIA also discredited Yang's affidavit because she did not offer any evidence supporting her second-hand assertions. Second, the BIA rejected Yang's argument that she could file a successive asylum application without a timely motion to reopen and without showing changed country conditions.

We review the denial of a motion to reopen for an abuse of discretion. *Pelinkovic v. Ashcroft*, 366 F.3d 532, 536 (7th Cir. 2004). Generally, an alien may file one motion to reopen within 90 days of the date on which the final administrative decision was entered based on evidence that "is material and was not available and could not have been discovered or

presented at the former hearing."  8 C.F.R. § 1003.2(c)(1), (2); *see Lin v. Gonzales*, 435 F.3d 708, 710 (7th Cir. 2006).  The number and time limitations are excepted if, with the presentation of this new evidence, the alien can establish changed conditions in the country to which she was ordered removed.  8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); *see Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2006).  The alien cannot demonstrate changed conditions with "cumulative evidence that conditions asserted in the original application persisted." *Zhao*, 440 F.3d at 407 (internal quotation marks and citation omitted).

In her petition for review, Yang initially argues that the BIA abused its discretion by mischaracterizing her claims in two ways, but both arguments are frivolous and can be quickly resolved.  Initially she alleges that the BIA incorrectly said that the basis for her petition was a change in personal circumstances due to the birth of her third child when it was really based on changed country conditions.  But the BIA simply acknowledged that the birth of her third child did not constitute a change in country conditions and then went on to discuss whether Yang's other evidence established changed country conditions.  Second, Yang contends that the BIA incorrectly stated that she argued that successive asylum applications are not subject to the time and number constraints of a motion to reopen.  But Yang did make that argument to the BIA, and the BIA properly concluded that she could not file a successive application notwithstanding the time and number limitations on her motion to reopen.  *See Chen v. Gonzales*, 498 F.3d 758, 759-60 (7th Cir. 2007).

The thrust of Yang's argument on appeal is that the BIA abused its discretion in finding that the evidence she submitted did not demonstrate a material change in country conditions.  In her petition, she focuses principally on the 2004 and 2005 country reports, the policy statement from the NPFPC, and her own affidavit to argue that enforcement of the one-child policy had worsened in her village and province since her hearing in 2003.  She contends that the evidence provides "a far more damning account" and demonstrates an "increase in the use of forced abortions and sterilizations."

Whether Yang's characterizations of the conditions in China are accurate or not, they do not reflect what the evidence actually establishes.  The evidence Yang submitted, contrary to her assertions, does not demonstrate a change in conditions that is more than cumulative of the conditions established at her first hearing, as the BIA concluded.  First, the 2004 and 2005 country reports do not reflect massive abuse or worsening conditions as compared to the 2002 country report Yang submitted with her initial application.  The Chinese national government maintains a policy prohibiting physical coercion, but some incidences of forced abortion and sterilization continue to occur in rural areas. *See Wang v. B.I.A.*, 437 F.3d 270, 274 (2d Cir. 2006).  Notably, none of the documented cases of forced abortions and sterilizations were in the area where Yang is from, including the horrific detention of hundreds of thousands of people in "population schools" and the forced

sterilization of at least 7,000 people in Linyi in the Shandong Province in 2005.  Yang is from the Fujian Province, not the Shandong Province.  Moreover, the 2005 country report noted that the family planning policy "retained" coercive elements and that there "continued to be sporadic reports of violations," which suggests that the conditions remained the same and had not worsened.  U.S. Dep't of State, *China: Country Reports on Human Rights Practices - 2005* (Mar. 8, 2006).

Secondly, as we read it, the policy statement from the administrative office of the NPFPC does not reflect any changed conditions.  The statement merely confirms that China's family-planning policies apply to all couples living abroad as long as both spouses are Chinese citizens—a fact that was not even at issue at Yang's first hearing and that does not demonstrate changed country conditions.  Moreover, the policy statement was also given in response to an inquiry about a specific case and was not particularized to Yang.  *See Wang*, 437 F.3d at 274.

The rest of the evidence Yang submitted is equally unavailing.  A 1997 policy letter from China's Department of Public Security, the 1999 Changle City Family Planning Q & A Handbook, Aird's 2002 testimony, the 2003 consular information sheet, and Wu's 2004 testimony were all available before the BIA rendered its final decision in the case and thus could not possibly establish changed country conditions.  *See Lin*, 435 F.3d at 711; *Haile v. Gonzales*, 421 F.3d 493, 497 (7th Cir. 2005).  Moreover, we have endorsed the BIA's analysis of the limited usefulness of the Changle City Handbook.  *See Wang v. Keisler*, 505 F.3d 615, 622-24 (7th Cir. 2007).  In *Wang*, we discussed two BIA cases recognizing that the handbook says that sterilization is mandatory for couples who have two children but concluding that the handbook does not demonstrate that the policy is implemented by force that rises to the level of persecution.  *Id.* at 623-24 (citing *In re J-W-S*, 24 I & N Dec. 185 (BIA 2007) and *In re J-H-S*, 24 I & N Dec. 196 (BIA 2007)).  Also, we should make clear that Yang failed to submit any evidence to dispute that conclusion.  The handbook's relevance is also tenuous, as Yang is from Fuzhou City, not Changle City, though both are in the Fujian Province.

This leaves only Yang's affidavit, which the BIA found was insufficient to demonstrate changed country conditions.  In it Yang states that her parents told her that the government has increased the use of forced sterilization since 2005, that a classmate and cousin were forcibly sterilized in her village in 2006, and that village officials know that she has three children.  The BIA noted that Yang did not offer a statement from her parents or her village's family planning committee or any other evidence supporting her contentions.  Given that the documentary evidence Yang submitted does not show changed country conditions, it was not an abuse of discretion for the BIA to essentially dismiss Yang's affidavit as unreliable because it was based solely on second-hand knowledge, *see Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997), and not otherwise supported by the

record, *see Pelinkovic*, 366 F.3d at 537-38, especially given the "heavy burden" Yang bears in moving to reopen her case, *Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002).

We deny Yang's petition for review.