In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3179

LIN XING JIANG,

*Petitioner*,

*v.*

ERIC H. HOLDER, Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A78-745-524

ARGUED MAY 18, 2010—DECIDED MARCH 18, 2011

Before O'CONNOR*, *Associate Justice*, and KANNE, and
ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*.  The Board of Immigration Ap-
peals sought to return Lin Xing Jiang to China after

---

* The Honorable Sandra Day O'Connor, Associate Justice of
the United States Supreme Court (Ret.), sitting by designation
pursuant to 28 U.S.C. § 294(a).

she arrived on U.S. soil without proper permission to enter. After her initial request for asylum was denied, and the time for filing a petition for review or a motion to reopen the proceedings had run, Jiang filed a motion to reopen the proceedings with the Board, alleging a change of circumstances in China supported her claim for relief. The Board found that the evidence she sought to offer either was available or could have been discovered or presented at the former hearing and denied the motion to reopen. Jiang petitioned this court to review the order of the Board. We affirm.

## I.

Jiang, a native and citizen of China, entered St. John, United States Virgin Islands, on September 22, 2000. The Immigration and Naturalization Service, now the Department of Homeland Security, charged Jiang as being an alien present in the United States without being admitted or paroled and began removal proceedings. Jiang filed for asylum, claiming that she had been forced to abort a pregnancy by the Chinese government. On December 20, 2002, Jiang appeared before an immigration judge who concluded that her story was not credible and denied her application for asylum, withholding of removal, and protection under the Convention Against Torture. (R. 146-158). Jiang appealed the immigration judge's decision to the Board, which, on March 18, 2004, affirmed the decision without an accompanying opinion. (R. 105). The statutory ninety-day deadline for appeals passed without word from Jiang.

Over four years later, Jiang filed a motion to reopen her proceedings, claiming that she had new and material evidence not discoverable or available at her former hearing, and thus her untimely petition should be permitted under the regulatory exception to the time limits for motions to reopen based on changed country conditions, citing 8 C.F.R. § 1003.2(c)(3)(ii). For the first time, Jiang argued that she feared persecution based on her Catholic religion. She also cited as new evidence the fact that since the time of the last hearing, when she was pregnant with her first child, she had given birth to two children in the United States in violation of China's family planning policies.

Jiang informed the Board that she was baptized as a Catholic soon after birth and that both she and her family have continued to practice Catholicism to this day—she in the United States, and her family in underground, unregistered churches in China. Jiang alleges that her family arranged for her to leave China for the United States so that she could continue to practice her religion and because they feared she could not adhere to China's restrictive population control policy. Jiang argued that circumstances had worsened for practicing Catholics in China, and that should the United States remove her to China, she would return to her former underground Catholic church and risk persecution. Finally, Jiang stated that although she had told her immigration lawyer that she had grown up in a Catholic family in China and was a practicing Catholic, he did not include a claim for religious persecution in her initial petition for asylum.

The Board concluded that Jiang had not submitted adequate evidence to support reopening, and that the articles and reports Jiang submitted did not show that members of underground churches were in more danger than they had been at the time of her hearing in 2002. (R. 3). The Board noted that Jiang did not specifically claim in her motion that her former counsel provided ineffective assistance of counsel and, in any event, failed to meet the requirements of such a claim. (R. 4). Finally, the Board concluded that Jiang did not submit a new asylum application as is required when filing a motion to reopen. *Id* at n.1. On August 5, 2009, the Board denied Jiang's motion to reopen. *Id.*

Jiang petitioned this court for review of the Board's decision denying the motion to reopen, a decision the Supreme Court has held we have jurisdiction to review. *Kucana v. Holder*, 130 S. Ct. 827, 831 (2010). Our review, however, defers to the decision of the Board unless it has abused its discretion, that is, unless it has made its decision without rational explanation, departs from established policies without explanation, or rests on an impermissible basis such as invidious discrimination. *See Xiao Jun Liang v. Holder*, 626 F.3d 983, 988 (7th Cir. 2010). For the reasons set forth below, we find it has not, and thus deny the petition.

## II.

Under the Immigration and Nationality Act, an asylum seeker may collaterally attack a final order of removal by filing a motion to reopen with the Board, which, in

its discretion, it may grant or deny. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(a). A motion to reopen based on changed country conditions is exempt from the usual ninety-day statutory deadline for filing such motions so long as the evidence of the changed conditions "is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C.A. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii); *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005).

The petitioner concedes that the evidence she presents "is technically not new evidence [but] was not available at the initial hearing because her attorney failed to present it," and that "she did not have an opportunity to present all her persecution claims." (Brief of Petitioner at 13). This argument, however, is one claiming ineffective assistance of counsel, not changed country conditions. After all, according to Jiang, she has been a practicing Catholic all of her life, and the abuse of Catholics by the Chinese government was well-documented when Jiang first appeared before the immigration court in 2002. What she argues is not that the information was not available to her at the time of the hearing, but that her attorney was ineffective for failing to present it—or to inform her that a claim of persecution based on her religion would be relevant.

Asylum seekers hold no Sixth Amendment right to counsel. *Toure v. Holder*, 624 F.3d 422, 430 (7th Cir. 2010). "[N]o statute or constitutional provision entitles an alien who has been denied effective assistance of counsel

in . . . her removal proceeding to reopen the proceeding on the basis of that denial." *Jezierski v. Mukasey*, 543 F.3d 886, 889 (7th Cir. 2008) (citations omitted) *cert. denied,* 129 S. Ct. 1662 (2009). This Circuit has recognized, neverthe-less, that the denial of effective assistance of counsel may under certain circumstances violate the due process guarantee of the Fifth Amendment. *Toure*, 624 F.3d at 430.

The Board long ago recognized this potential for a due process violation in *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988) ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case."). And in this same case, the Board held that an asylum seeker must do three things to raise an ineffec-tiveness claim: (1) submit an affidavit establishing that she had an agreement with counsel to represent her and detailing its terms; (2) present evidence that she has given notice to her counsel of the ineffectiveness claim and an opportunity to respond to the allegations, and include any response she has received; and (3) if the attorney violated his ethical or legal obligations, show that she has filed a complaint with the governing dis-ciplinary authorities or explain why she has not done so. *Matter of Lozada*, 19 I. & N. Dec. at 639.[1] We have sus-

---

[1] In *Matter of Compean (Compean I)*, 24 I. & N. Dec. 710 (AG 2009), the Attorney General concluded that the "Constitution does not confer a constitutional right to effective assistance of
(continued...)

tained repeatedly the validity of these requirements. *See Ghaffar v. Mukasey*, 551 F.3d 651, 656 (7th Cir. 2008); *Jezierski*, 543 F.3d at 889; *Stroe v. INS*, 256 F.3d 498, 501 (7th Cir. 2001). Jiang cites several Ninth Circuit cases for the proposition that failure to comply with the *Lozada* requirements is not fatal to a motion to reopen, but this Circuit, however, has stated that "satisfying the requirements of *Lozada* is a necessary condition to obtaining reopening on the basis of ineffective assistance of counsel." *Jezierski*, 543 F.3d at 889. Even if it were not, we certainly could not say that the Board abused its discretion by requiring some compliance with *Lozada*, where Jiang has failed to satisfy even one of the *Lozada* requirements or to even articulate a specific claim of ineffective assistance. *See Patel v. Gonzales*, 496 F.3d 829, 831 (7th Cir. 2007).

Even were we to construe Jiang's argument as a claim of changed conditions rather then a claim for ineffective

---

[1] (...continued)
counsel in removal proceedings," either through the Fifth or Sixth Amendments, thus overruling, in part, *Matter of Lozada*. *Id*. at 714. Later that year, the Attorney General vacated the *Compean I* decision, *Matter of Compean* (*Compean II*), 25 I. & N. Dec. 1 (AG 2009), and ordered the Executive Office of Immigration Review to reinstate use of the *Lozada* standards pending a comprehensive review of the rules in this area. *Id.* at 2-3. In any event, the Board adjudicated Jiang's ineffective assistance claim under the law that existed prior to the decision in *Compean I*.

assistance of counsel, Jiang failed to demonstrate that there were material changes in the relevant circumstances in China. *Joseph v. Holder*, 579 F.3d 827, 833-34 (7th Cir. 2009); 8 C.F.R. § 1003.2(c)(3)(ii). A changed circumstance need not reach the level of a broad social or political change in a country; a personal or local change might suffice. *Joseph*, 579 F.3d at 834. Nevertheless, there must be evidence of some material changed circumstances. Cumulative evidence that the conditions asserted in the original application persisted fails to meet this burden. *Zhao*, 440 F.3d at 407.

Jiang submitted several internet news reports posted in 2008 by an organization called Chinaaid that recounted incidents in which practicing Catholics were abused. The Board noted that the evidence in the record at the time of Jiang's initial hearing indicated that China had a terrible human rights record of religious persecution against unapproved religious groups including Catholics. The Board referenced the 2000 U.S. Department of State Country Report on Human Rights Practices in China (2000 Country Report), which included evidence that officials razed or confiscated churches and places of worship, broke up services, harassed leaders and adherents, at times fining, detaining, imprisoning, beating, and torturing them. (R. 268) (2000 Country Report). The Board also noted that according to Jiang's own affidavit, she and her family suffered religious persecution before she came to the United States. (R. 4). A letter from Jiang's friend that Jiang submitted as evidence of changed circumstances states that, "the situation in China is still the same as time [sic] you left

China." (R. 63). The articles and evidence submitted by Jiang merely support the proposition that the human rights abuses present at the time of her original hearing in 2002 continue to this day.

Indeed, the State Department's 2009 Country Report includes similar reports of surveillance, harassment, and persecution of Catholics. Nevertheless, this most recent Country Report may offer a glimmer of optimism for practicing Catholics as the report notes that "the distinction between the official Catholic Church, which the government controlled politically, and the unregistered Catholic Church was less distinct than in the past. U.S. Dept. Of State Country Reports on Human Rights Practices in China, 2009.[2] In some official Catholic churches, clerics led prayers for the Pope, and pictures of the Pope were displayed." *Id.*

Nor can Jiang rely on her claim that because she has had two children in the United States she will face persecution in China for violations of that country's one-child policy. That argument has been vetted in this court and rejected. See *Joseph*, 579 F.3d at 834. *Cheng Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007). This is not to say

---

[2] Although the 2009 Country Report was not part of the record below, we still may take judicial notice of it. *See Ayele v. Holder*, 564 F.3d 862, 873 (7th Cir. 2009). And although Country Reports have limited utility in some circumstances, *see Galina v. I.N.S.*, 213 F.3d 955, 959 (7th Cir. 2000), they can serve as one useful form of comparison in examining changes in country conditions. *Id.*

that an applicant for asylum must show some broad social or political alteration in the country conditions, as opposed to a more personal or local modification, but an applicant cannot claim changed country conditions based on her own actions in the United States when the conditions in the country of origin have not materially changed. *Joseph*, 579 F.3d at 834. Jiang has offered no evidence that the population control efforts and one-child policy have materially changed since the date of her initial hearing.

Finally, the Board in a footnote also commented that Jiang failed to submit a new asylum application with her motion to reopen, as is required by its regulations. (R. 4). *See* 8 C.F.R. § 1003.2(c)(1). The Board did not state that it denied the petition based on this failing, but it was within its discretion to do so. *See Conti v. I.N.S.*, 780 F.2d 698, 701 (7th Cir. 1985) ("failure to comply with the procedural requirements for a valid motion to reopen alone is normally sufficient to overcome the contention that the denial of such a motion was an abuse of discretion"); *see also Patel*, 496 F.3d at 831.

In her brief to this court, Jiang raises several other arguments regarding the merits of her original asylum claim, namely that she would suffer persecution if returned to China because of her coerced abortion, her opposition to, and violations of China's family planning policy. These arguments, however, attack the Board's 2004 decision which Jiang chose not to appeal and cannot appeal at this late date. *See Stone v. I.N.S.*, 514 U.S. 386, 405 (1995); *Ajose v. Gonzales*, 408 F.3d 393, 394-95 (7th

Cir. 2005). The only decision before this court is the Board's August 5, 2009 decision denying Jiang's motion to reopen.

The Board did not abuse its discretion in denying Jiang's motion to reopen the proceedings. The petition for review is therefore DENIED.