**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 9, 2006
Decided July 27, 2006

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2877

| | | |
|---|---|---|
| PING ZHENG, | | Petition for Review of an Order |
| | *Petitioner*, | of the Board of Immigration |
| | | Appeals |
| *v.* | | |
| | | No. A 78-746-413 |
| ALBERTO R. GONZALES, Attorney | | |
| General of the United States, | | |
| | *Respondent*. | |

**O R D E R**

Claiming that she was persecuted in China's Fujian Province because of her actual or imputed participation in the Falun Gong movement, Ping Zheng applied for asylum, withholding of removal, and relief under the Convention Against Torture. The Immigration Judge denied relief because he found Zheng not credible and because he concluded that Zheng did not demonstrate that she practiced Falun Gong, suffered past persecution, or had a well-founded fear of future persecution. The BIA summarily affirmed the IJ's determination. Zheng now petitions for review of that judgment. We

conclude that the BIA's decision was adequately supported by substantial evidence, and we therefore deny the petition.

At her hearing, Zheng testified that she was born in Fuzhou City, where she attended Ting Jiang Middle School. In September 2000, a teacher named Jia began teaching her physical exercises for half an hour once a week. Jia did not tell Zheng that he was instructing her in the practice of Falun Gong, and Zheng believed the exercises to be Tai Chi. Shortly after beginning the exercises, Zheng was questioned by the school principal and two education bureau officials about her relationship with Jia. In December 2000 she was suspended from school for two weeks. Upon her return, she heard that Jia had been jailed for practicing Falun Gong.

The following month Zheng was expelled from school for practicing Falun Gong. After her expulsion, every two weeks officials from the Public Security Bureau came to her home or asked her to come to the Bureau office for questioning. In March 2001, they questioned her about her involvement with Falun Gong and detained her for two weeks with 20 other Falun Gong practitioners. Zheng testified that during her detention she was not questioned or physically abused, though she was prohibited from talking with anyone. In her asylum application Zheng stated that her hands were "held back so that we could not go to restrooms, go for food and sleeping" [*sic*]. Curiously, she did not mention these details at her hearing.

Upon her release, public security officers instructed her not to practice Falun Gong or have contact with Falun Gong practitioners or else she would be detained again. These officers also visited her at home unannounced at least once a week, threatening her, searching her home, and questioning her about whether she was practicing Falun Gong. She asserts that each time three or four "ferocious" officers came to her home and refused to believe her claims that she had not been practicing Falun Gong. Zheng contends that she was harassed by the Public Security Bureau and "was not able to live a normal life" in China.

Zheng left China in May 2001 and arrived in the United States two months later, thanks to the efforts of a "snakehead" in Vietnam whom her family paid to smuggle her into the United States. She now lives in St. Louis, Missouri, where she practices Falun Gong in Arch Square every Saturday for one and a half to two hours. She asserts that her current practice of Falun Gong is identical to the exercises she learned in China from her teacher Jia.

The IJ ruled adversely on Zheng's credibility because her testimony was "rather inconsistent and almost completely unsubstantiated." The IJ rejected Zheng's assertion of past persecution because he did not believe that Zheng was a Falun Gong practitioner. He made an adverse credibility finding based on the lack of evidence

corroborating her Falun Gong involvement in China or the United States and on inconsistencies in her testimony about the dates of her detention and her departure from China. In addition, the IJ rejected Zheng's effort to demonstrate a well-founded fear of future persecution. In this connection, he noted that she was not a Falun Gong practitioner while in China, the authorities released her after just two weeks, and her Falun Gong activities "have been minimal, in fact, one might say less than minimal." Finally, the IJ observed that Zheng's background resembled that of many Chinese from Fujian Province who come to the United States for economic reasons and therefore her reasons for leaving China "may very well lie elsewhere other than in the reasons expressed in her application." Accordingly, the IJ denied Zheng's requests for asylum, withholding of removal, and relief under the Convention Against Torture. The BIA summarily affirmed the IJ's determination.

We review the denial of an asylum claim for substantial evidence and will deny the petition for review if the BIA's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Liu v. Ashcroft*, 380 F.3d 307, 312 (7th Cir. 2004). We will grant the petition only if the evidence compels a different conclusion. *Id.*; *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005). To qualify for asylum, an applicant must show that she was persecuted in the past or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42); *Liu*, 380 F.3d at 312. To succeed on a claim of imputed political opinion, an applicant must show that her persecutors attributed a political opinion to her, *Lwin v. INS*, 144 F.3d 505, 509 (7th Cir. 1998), and that this attributed opinion was the motive for the persecution, see *INS v. Elias-Zacarias*, 502 U.S. 478, 482–83 (1992). The practice of Falun Gong can serve as the basis for a claim of persecution on account of imputed political opinion. See *Liu*, 380 F.3d at 314–15; *Zhou v. Gonzales*, 437 F.3d 860, 868–69 (9th Cir. 2006); *Gao v. Gonzales*, 424 F.3d 122, 129–30 (2d Cir. 2005).

Zheng claims that the IJ came to the wrong conclusion about her credibility because he disregarded or misconstrued the evidence when he concluded that she did not actually practice (or was not perceived to be practicing) Falun Gong while in China. Among the evidence overlooked, she contends, was her testimony that teacher Jia instructed her in exercises that the authorities believed to be Falun Gong, that Jia was arrested for practicing Falun Gong, that she was expelled because of her perceived Falun Gong observance, and that the exercises she was taught are the same exercises she performs today as a Falun Gong practitioner.

Zheng has a point here. Credibility determinations are accorded substantial deference, but they must be supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006). We agree with Zheng that the IJ failed to substantiate his conclusion that Zheng did

not actually practice (or was not perceived to be practicing) Falun Gong. One need not be aware of or adhere to certain beliefs in order to be considered a Falun Gong practitioner, as long as one performs the exercises that are the heart of observance. See *Iao v. Gonzales*, 400 F.3d 530, 532 (7th Cir. 2005). Although Zheng's testimony that she unknowingly practiced Falun Gong may strain credulity, the IJ nonetheless failed to explain how he concluded that the authorities could not have believed her to be a Falun Gong practitioner. Indeed, the IJ devoted only one sentence of his decision to the issue, stating merely that "it seems rather a dubious belief on her part since she herself was not a Falun Gong practitioner and since the authorities released her after two weeks." But Zheng's actual practice and the duration of her detention have no bearing on whether the authorities *believed* her to be a follower of Falun Gong. Notably, the IJ does not dispute the authenticity or accuracy of the certification of expulsion from Zheng's school, which explicitly stated that she was expelled because of her practice of Falun Gong. Thus, to the extent the IJ found Zheng not credible concerning her Falun Gong practice, his reasons do not withstand scrutiny.

But Zheng faces a more difficult hurdle. Even if the IJ had properly imputed the practice of Falun Gong to her, she failed to prove that she was persecuted while in China. The latter point was an alternative basis for the IJ's ultimate decision rejecting her applications. Zheng does not mount much of a challenge to the IJ's finding that her treatment did not qualify as "persecution." She points only to her two-week detention and expulsion from school.

Mere short-term imprisonment with no physical abuse or generalized, non-specific assertions of physical abuse, however, do not constitute persecution. *Liu*, 380 F.3d at 313 (two-day detention in which petitioner endured pushing and hair pulling followed by search of her home does not compel finding of persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003) (three-day detention, food deprivation and beating causing petitioner's face to swell does not compel finding of persecution). Lengthier detentions can constitute persecution when accompanied by some manner of physical abuse or deprivation. See *Soumahoro v. Gonzales*, 415 F.3d 732, 737–38 (7th Cir. 2005); *Asani v. INS*, 154 F.3d 719, 722–23 (7th Cir. 1998).

The IJ's finding here again is poorly explained, but it is supported by substantial evidence in the record. Although a detention of two weeks is not insignificant, Zheng testified that her detention was not accompanied by the physical injury and deprivation of basic necessities that have led us in other cases to conclude that similarly long detentions rose to the level of persecution. *See Asani*, 154 F.3d at 723 (focusing not on the duration of the detention but on the physical harm and deprivation of food and water). Even if the IJ credited Zheng's assertion in her asylum application—which was conspicuously absent from her testimony at the hearing—that her hands were tied behind her back, making it difficult to eat, sleep or use the

restroom, Zheng's treatment was still less severe than the treatment of the petitioners in *Liu* or *Dandan* since she did not allege that she had been abused physically or deprived of food or water. Nor does Zheng's expulsion from school constitute persecution. See *Liu v. Ashcroft*, 380 F.3d at 313–14. At the least, this evidence does not compel a finding that Zheng was persecuted.

Zheng also challenges the IJ's conclusion that she lacks a well-founded fear of future persecution if returned to China. The IJ explained that Zheng was not a Falun Gong practitioner while in China, that the authorities released her after two weeks, and that her Falun Gong activities in the United States have been minimal. She responds that her past treatment, combined with the "prevailing country conditions" for Falun Gong practitioners, satisfy her burden of proving a well-founded fear. In mentioning "prevailing country conditions," Zheng presumably is referring to the State Department's 2003 Country Report, which describes abuses suffered by Falun Gong practitioners at the hands of the Chinese government since 1999, including loss of employment, reeducation classes, labor camps, imprisonment, torture, and death.

If a petitioner fails to establish past persecution, she still can establish a claim of asylum by showing, based on "credible, direct and specific evidence," that a reasonable person would fear future persecution if returned. *Giday v. Gonzales*, 434 F.3d 543, 553-54 (7th Cir. 2006). The petitioner must show that she has a genuine fear of returning to her home country, *Asani*, 154 F.3d at 725, and she "must 'present *specific, detailed* facts showing a good reason to fear that . . . she will be singled out for persecution,'" *Ahmed v. Ashcroft*, 348 F.3d 611, 618 (7th Cir. 2003) (italics in original). The petitioner need not show that future persecution is definite or even likely; it need only be a "reasonable possibility." *Id.* Standing alone, a country report detailing generalized evidence of political turmoil, difficult conditions, and abuses is insufficient to establish a well-founded fear of persecution. *Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004).

Again, the IJ did not substantiate his finding; his conclusion, however, was supportable because Zheng failed to meet her burden of establishing a reasonable possibility that she would be subject to persecution if returned to China. The only evidence Zheng presented was the 2003 Country Report and her own testimony that she currently practices Falun Gong. Although the Country Report indicates that some Falun Gong followers have been subject to severe treatment by the authorities, Zheng provides no reason to believe either that every follower of the sect is persecuted or that she would be targeted specifically for such treatment.

Although the IJ's adverse credibility finding lacks adequate support, we cannot say that the record as a whole compels an outcome different from the one the judge reached. Because Zheng's brief before this court does not develop any arguments in support of her claims for withholding of removal and relief under the Convention

Against Torture, these claims are waived. *Huang v. Gonzales*, 403 F.3d 945, 951 (7th Cir. 2005). We therefore **DENY** the petition for review.