In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-3719

XIU ZHEN LIN and JIA HUI SHI,

*Petitioners*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent*.

Petition to Review an Order of the
Board of Immigration Appeals.
Nos. A77-950-569, -570.

ARGUED JUNE 10, 2008—DECIDED JULY 8, 2008

Before POSNER, COFFEY, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The female petitioner and her
son (whose opposition to removal is derivative from his
mother's and therefore need not be discussed separately)
are Chinese citizens who in 2001 were ordered removed
to China. The Board of Immigration Appeals affirmed
the order the following year. For unexplained reasons,
the order was not executed, and four and a half years
later the petitioner asked the Board to reopen the re-
moval proceeding on the ground that China was en-

forcing its "one child" policy more stringently than at the time of the original proceeding; she has three children, two born in the United States (the son born in China is the other petitioner). The Board denied the motion to reopen, on the ground that conditions in China had not worsened. Congress has made persecution for "resistance to a coercive population control program" a ground for asylum. 8 U.S.C. § 1101(a)(42)(B); *Zheng v. Gonzales*, 409 F.3d 804, 811 (7th Cir. 2005); *Lin v. Ashcroft*, 385 F.3d 748, 752-53 (7th Cir. 2004); *Li v. INS*, 453 F.3d 129, 135 (2d Cir. 2006). But unless the policy is enforced more stringently now than when the petitioner was ordered removed ("changed country conditions"), she cannot reopen the removal proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); *Kebe v. Gonzales*, 473 F.3d 855, 857-58 (7th Cir. 2007); *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2006) (per curiam); *Alemu v. Mukasey*, 509 F.3d 907, 910 (8th Cir. 2007).

The 2006 report of the State Department on conditions in China states that in Fujian, the petitioner's province, the government "reportedly forcibly sterilized women" who violate the "one child" policy. U.S. Dep't of State, *China: Country Reports on Human Rights Practices—2006*, § 1(f) (Mar. 6, 2007). This is a stronger statement than found in the country report for 2001, the year the petitioner was ordered removed; there we read that China was "beginning to relax" enforcement of the policy in cities and that after reports of forced abortions and sterilizations in Fujian, officials "scaled back the intensity of their family-planning enforcement efforts." U.S. Dep't of State, *China: Country Reports on Human Rights Practices—2000*, § 1(f) (Feb. 23, 2001).

A recent letter from the "Villager Committee of Xiguan Village, Wuhang, Changle City," the governing body of

the petitioner's village, states that the village "strictly enforces The Population and Family Planning Ordinance in Fujian Province," that "all citizens with two children will be designated as a target for sterilization," and "although you currently reside in the United States, you are still a citizen of the People's Republic of China. It is known that you have had three children. You certainly will be subjected to sterilization procedures unless you have become a U.S. citizen or permanent residents, or have Master or Ph.D. degree from a U.S. university," which neither petitioner has. The government does not doubt the letter's authenticity but says that it doesn't indicate changed circumstances since the removal proceeding. That is incorrect. "The Population and Family Planning Ordinance in Fujian Province" is a reference to the Population and Family Planning Regulations of Fujian Province, first enacted in 1988 but revised in July 2002 to implement a national law, the Population and Family Planning Law of the People's Republic of China, which took effect that year. Although neither the national law nor the Fujian regulations mention sterilizations, Article 41 of the national law says that violators will be assessed a "social compensation" fee, and Article 39 of the Fujian regulations says that for a family with three children the social compensation fee may exceed six times a couple's annual income. (Translations of both documents are attached to the U.S. State Department's *China Profile of Asylum Claims and Country Conditions* (May 2007).) The petitioner's family is not wealthy. The national law and the provincial regulations do not specify the consequence for a person who cannot pay the fee.

The Board's treatment of the villager committee's letter is the most disturbing aspect of the case. After noting that the letter stated that the petitioner would "be subjected to sterilization procedures" if she returned to her

village, the Board said that she "had not provided evid-
ence that the policy is implemented through physical force
or other means that would amount to persecution."
Reading this we wondered whether the Board believes
that if the village government imposed a fine greater
than the petitioner could pay, and if as a result she
was required to undergo sterilization (which seems
implicit in the reference to "target for sterilization" and
"subjected to sterilization procedures"), the steriliza-
tion nevertheless would not amount to persecution. At
argument, the Justice Department's lawyer said that
this was what the Board believes, while appropriately
noting his personal reservations about the soundness
of such a belief.

The implication is that if a government tells a religious
heretic we are going to fine you $1 million for your heresy
and if you cannot pay we are going to burn you at the
stake, and the heretic cannot pay and therefore is exe-
cuted, the burning of the heretic would not, in the
Board's view, amount to persecution. We cannot imagine
that this is really the Board's view, since in cases like
*In re T-Z-*, 24 I. & N. Dec. 163, 173-75 (BIA 2007), the Board
has said that "a particularly onerous fine" can amount to
persecution even if nonpayment does not subject the
victim of the persecution to physical violence. The courts
have ruled similarly. *Koval v. Gonzales*, 418 F.3d 798, 805
(7th Cir. 2005); *Eduard v. Ashcroft*, 379 F.3d 182, 187 (5th
Cir. 2004); *Shan Liao v. Department of Justice*, 293 F.3d 61, 70
(2d Cir. 2002); *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.
1969). It is even clearer that, as the Board in *In re T-Z-*,
*supra*, 24 I. & N. Dec. at 168-169, acknowledged, an eco-
nomic penalty that effectively compels a person to undergo
an abortion is a form of persecution. The courts, again,
have ruled likewise. *Xiu Ling Chen v. Gonzales*, 489 F.3d 861,

863 (7th Cir. 2007) (for the average Chinese citizen, a fine of ten times her yearly income is "particularly onerous" and if it were imposed the "only practical alternative would be to avoid having more children, if necessary by abortion or sterilization"); *Zhang v. Gonzales*, 408 F.3d 1239, 1247-48 (9th Cir. 2005) (child was not allowed to attend school until parents paid a "substantial fine," and denial of educational opportunities can constitute persecution); *Li v. Attorney General*, 400 F.3d 157, 168 (3d Cir. 2005) (fine equal to 20 months' salary can amount to persecution); *Wang v. Ashcroft*, 341 F.3d 1015, 1020 (9th Cir. 2003) (petitioner's abortions in China were "forced," in part because officials threatened to impose unreasonably high fees if she gave birth). If the Board's view is as represented by the government's lawyer, and were sustained, the Board would have handed to the world's persecutors a formula for preventing victims of persecution from obtaining asylum in the United States. All a persecuting government would have to do would be to impose a fine in excess of the victim's ability to pay, with death as the back-up punishment if the victim was (as he would be) unable to pay the fine.

It appears that the "one child" policy with sterilization as the sanction for violating it is enforced most vigorously in Fujian Province, and it is possible that if the petitioner and her son relocated to another part of China the risk of sterilization would be small, in which event they would not have a well-founded fear of persecution if they are removed. 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)(i); *Agbor v. Gonzales*, 487 F.3d 499, 505 (7th Cir. 2007); *Rashiah v. Ashcroft*, 388 F.3d 1126, 1132 (7th Cir. 2004); *Vente v. Gonzales*, 415 F.3d 296, 303 (3d Cir. 2005); *Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004). But the government has not argued this point. This is puzzling in light of our

recent decision in *Song Wang v. Keisler*, 505 F.3d 615 (7th Cir. 2007), another case from Changle in Fujian Province, where the Board, as our opinion noted, *id*. at 622, said that the petitioner could relocate to a part of China where the "one child" policy was not enforced as harshly as it is in Fujian.

Our opinion in *Song Wang* also expressed skepticism that the threat of forcible sterilization of violators of the policy was grave, *id*. at 622-24, because of evidence that the policy is enforced mainly by monetary penalties, the size of which was not indicated. But that was before the government's lawyer told us in this case that the Board may not consider sterilization induced by inability to pay a monetary penalty to be a form of persecution, despite the Board's repeated acknowledgment in other cases that onerous monetary penalties can be persecution.

The petitioner has carried her burden of showing changed country conditions that entitle her to reopen her removal proceeding. The Board will therefore have to determine the likely consequences if the petitioner (and her son) are returned to China. This will depend on the current policy of governmental authorities in Fujian, the size of the monetary penalties they are likely to impose on the petitioner, whether she is likely to be able to pay them, if not whether she is likely to be required to undergo sterilization, and whether she can avoid any or all consequences of her violation of the one-child policy by relocating to another part of China.

VACATED AND REMANDED.

---