# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 07-2961

LI FANG HUANG,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
   of the United States,

*Respondent.*

No. 07-3322

MING DUNG, also known as MING DONG,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
   of the United States,

*Respondent.*

No. 07-3673

XIU QIN ZHENG, also known as XUIQIN ZHENG,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
   of the United States,

*Respondent.*

No. 07-3840

XUE JIN LI,

*Petitioner*,

v.

MICHAEL B. MUKASEY, Attorney General
   of the United States,

*Respondent*.

_____

Petitions to Review Orders of the
Board of Immigration Appeals.
Nos. A77-651-879, A-74-762-766, A77-847-340, A78-125-604.

_____

ARGUED JULY 9, 2008—DECIDED JULY 15, 2008

_____


Before POSNER, SYKES, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. We have consolidated for decision four petitions to review orders by the Board of Immigration Appeals denying petitions to reopen removal proceedings. The petitions to review present overlapping and to a degree identical issues.

In *Kucana v. Mukasey*, No. 07-1002, 2008 WL 2639039 (7th Cir. July 7, 2008), this court held that we do not have jurisdiction to review petitions to reopen removal proceedings, including proceedings in which the alien sought asylum, unless the petition to review the Board of Immigration Appeals' denial of reopening presents a question of law. The facts that the Board finds, and the reasons that it gives, en route to exercising its discretion to grant or deny a petition to reopen a removal pro-

ceeding, and the discretionary decision itself, cannot be reexamined by a court, whether for clear error, lack of substantial evidence, abuse of discretion, or any other formulation of a ground for reversing an administrative decision; all the court can decide is whether the Board committed an error of law. See also *Emokah v. Mukasey*, 523 F.3d 110, 119 (2d Cir. 2008). That will usually be a misinterpretation of a statute, regulation, or constitutional provision. *Kucana v. Mukasey*, *supra*, at *2-4; *Zeqiri v. Mukasey*, 529 F.3d 364, 369 (7th Cir. 2008); *Cevilla v. Gonzales*, 446 F.3d 658, 661 (7th Cir. 2006); *Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153 (2d. Cir. 2006); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). But it could also be a misreading of the Board's own precedent, as in *Ssali v. Gonzales*, 424 F.3d 556, 564-66 (7th Cir. 2005), or the Board's use of the wrong legal standard, as in *Azanor v. Ashcroft*, 364 F.3d 1013, 1019-21 (9th Cir. 2004), or simply a failure to exercise discretion or to consider factors acknowledged to be material to such an exercise. *Kucana v. Mukasey*, *supra*, at *4; see also *Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008) ("wholesale failure to consider evidence").

The category of reviewable determinations is illustrated by a case this court decided the day after the *Kucana* decision. *Lin v. Mukasey*, No. 07-3719, 2008 WL 26252776 (7th Cir. July 8, 2008). A Chinese woman who gave birth to two children in the United States sought asylum on the ground that if returned to China she would be forced to undergo sterilization for having violated China's "one child" policy. Her application for asylum was rejected and she was ordered removed to China. She remained in the United States illegally but later sought to reopen her removal proceeding on the basis of changed

conditions in China—namely, more vigorous enforce-
ment of the one-child policy than when she had been
ordered removed, creating a grave risk that she would
be subjected to sterilization. In the course of denying
the petition, the Board made a statement that the gov-
ernment's lawyer represented to us at argument meant
that if the sanction for violating the one-child policy is a
fine (called a "social compensation fee"), there can be no
inference of persecution even if the fine is so steep that
the violator will be unable to pay it and in consequence
will be ordered sterilized. Such a view would be incon-
sistent with (and a misreading, rather than a deliberate,
reasoned rejection of) countless Board and court deci-
sions and an unreasonable interpretation of the federal
statute that makes "resistance to a coercive population
control program" a ground for asylum. *Id*. at *1-2; 8 U.S.C.
§ 1101(a)(42)(B). And so the Board's denial of the peti-
tion to reopen was not insulated from our review.

   One of the cases before us today, Li's case, No. 07-3840,
is almost identical to *Lin*, but with the critical difference
that rather than suggesting that forced sterilization is not
persecution as long as it just backs up the "social com-
pensation fee," the Board found that there was no indica-
tion that the fee to which Li might be subjected if she
were returned to China and punished for violating the
one-child policy would be so stiff as to place her in
danger of being forced to undergo sterilization as a sanc-
tion for failing to pay it. The Board did not intimate, as
it had in *Lin*, that so long as forced sterilization is used
merely against people who fail to pay the fee for having
more than one child, it is not persecution. Li is in the
position therefore of merely disagreeing with the
weight that the Board placed on the various items of

evidence (country reports, provincial regulations, an unauthenticated notice from the government of Li's village, etc.) en route to its discretionary denial of the petition to reopen. No question of law is presented. We therefore have no jurisdiction to decide whether the petition should have been granted.

In contrast, Zheng's case, No. 07-3673, involves an arguable error of law. He had come to the United States from China in 1999 and had sought asylum on the ground that he had been persecuted for belonging to an underground Catholic church and for opposing China's "one child" policy; he claimed that his wife had been forced to have an abortion when she became pregnant a second time. (Whether the husband of a woman forced to have an abortion is automatically entitled to asylum, or must show that he opposed the one-child policy, has divided the circuits. Compare *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 396 (2d Cir. 2007) (en banc), with cases cited at *id*. at 400 n. 4. But Zheng claims to have opposed the policy.) The immigration judge denied asylum after an evidentiary hearing in 2001. A letter purporting to be from Zheng's former employer in China said that he was being fired because his wife had had a second child, and this contradicted Zheng's claim about the abortion. And the letter was dated after Zheng arrived in the United States, although he testified that it had been given to him in China when, and in explanation for why, he was fired. He submitted an abortion certificate but the immigration judge found that China issues such certificates only when the abortion is voluntary. There were other contradictions and anomalies and in addition Zheng was unable to answer elementary questions about Catholicism (such as what

communion is) and admitted never having attended a Catholic service in the United States. The immigration judge was skeptical that Zheng had ever been a Catholic, and rejected the claim that he had been persecuted either on account of religion or the one-child policy.

In 2007 Zheng moved to reopen the removal proceeding, primarily on the ground of changed country conditions—China's more vigorous enforcement of the one-child policy after 2001, which we discussed in *Lin*. In support Zheng presented affidavits from himself and his wife, along with purported letters from an underground Catholic church in China and his village government that indicate that if returned to China he will be punished for having joined the church. The affidavits state that his wife, who remains in China, has been beaten in an effort to induce him to return to China to face the music. The Board discounted the evidence presented in support of the petition because the claim of persecution had been rejected by the immigration judge in the removal proceeding.

The fact that evidence presented in support of a claim of asylum is rejected as noncredible has been held not to foreclose the reopening of the removal proceeding on a separate ground. *Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 and n. 3 (7th Cir. 2007); *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000); *Guo v. Gonzales*, 463 F.3d 109, 114 (2d Cir. 2006); *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004); *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001). Those holdings are rulings of law, and if the Board has rejected them, by holding that an immigration judge's refusal to credit any part of an asylum applicant's testimony precludes reopening even if the disbelieved testimony is at once inconsequential and unrelated to the

grounds presented in the petition to reopen, its rejection would present a question of law that we would have jurisdiction to consider. But all the Board did in Zheng's case was refuse to allow his petition to reopen to be used as a vehicle for reopening credibility issues. The immigration judge had not ruled that discrimination against Zheng on the basis of his belonging to an underground Catholic church could not amount to persecution, and this would be consistent with his facing persecution if returned to China, because the government has intensified its opposition to such churches. The immigration judge had simply disbelieved Zheng's testimony that anything had happened to him because of his belonging to a Catholic church, and even doubted whether Zheng is really a Catholic.

Since Zheng had been found to have lied at the hearing about both his claims, religious and population-policy persecution, he would have had to present evidence in support of reopening that was in no way dependent on his discredited credibility in order to establish a well-founded fear of persecution on the same grounds if he is returned to China. *Guo v. Ashcroft*, *supra*, 386 F.3d at 562; cf. *Guo v. Gonzales*, *supra*, 463 F.3d at 114. His own and his wife's affidavits, and unauthenticated and possibly fraudulent documents purportedly from the church and the village government, were not evidence that could be assumed to be uncontaminated by his demonstrated propensity to lie to obtain asylum. The Board is not required to ignore such a propensity in assessing such evidence, and so its decision in Zheng's case is within its discretionary authority and therefore unreviewable by us.

We turn to Huang's case, No. 07-2961. Huang, a Chinese woman, entered the United States in 1999 on false

documents. In 2002 she applied for asylum, claiming that she had fled China because the government, in an effort to induce her to marry a man whom she didn't want to marry, had forced her to have an abortion (she was pregnant by her boyfriend) and had seized her family's land. She failed to appear at her hearing before an immigration judge and was ordered removed. In 2006 she filed a motion to reopen, arguing that she had missed the hearing because she had not known when and where it would be held; earlier, however, she had said that she had not attended because she was afraid that she would be arrested and removed if she did. Later she changed her story back to the original one. The Board denied the petition, and the following year she filed a second petition to reopen, this one on the ground that she had received ineffective assistance at her first hearing. She claimed that she had missed her hearing because of a stomachache and that her then lawyer had failed to explain this to the immigration judge.

The Board denied the second petition as untimely. The deadline for the filing of a petition to reopen (180 days in Huang's case, 8 U.S.C. §§ 1229a(b)(5)(C)(i), (c)(7)(C), from the date of the final order of removal, *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005); *Guerrero-Santana v. Gonzales*, 499 F.3d 90, 92-93 (1st Cir. 2007)) can be equitably tolled because the statutory deadline is not jurisdictional. *Pervaiz v. Gonzales*, *supra*, 405 F.3d at 490, and cases cited there. But the Board refused to allow Huang's very late filing of a second petition because it disbelieved the stomachache story. As in Li's case, no question of law is presented by the petition to review the denial of reopening, and so we have no jurisdiction.

Had the Board refused to reopen the removal proceeding because it did not think that Huang had re-

ceived ineffective assistance from her lawyer, rather than because the petition to reopen had been untimely, the petition for review might be thought to present a question of law. Or might not; the issue is treated inconsistently in our cases. Compare *Sanchez v. Keisler*, 505 F.3d 641, 647-48 (7th Cir. 2007); *Kay v. Ashcroft*, 387 F.3d 664, 676 (7th Cir. 2004), indicating "yes," with *Patel v. Gonzales*, 496 F.3d 829, 831 (7th Cir. 2007), indicating "no," and *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 807-09 (7th Cir. 2003), and *Stroe v. INS*, 256 F.3d 498 (7th Cir. 2001), both leaning toward "no." We need not try to eliminate the inconsistency in this case.

That leaves Dung's case, No. 07-3322. It is another one-child case, indistinguishable from *Li* except that Dung further argues that he should be allowed to file a second asylum application after the first is denied, without having to file a petition to reopen. As he recognizes, we rejected the identical contention in *Cheng Chen v. Gonzales*, 498 F.3d 758 (7th Cir. 2007), and he has presented no reason to suggest that our decision should be reexamined.

The petitions in *Li* and *Huang* are dismissed for want of jurisdiction. The petitions in *Zheng* and *Dung*, which complain about both the Board's exercise of its discretion to deny a petition to reopen and alleged errors of law committed by the Board, are dismissed in part and denied in part. *Saintha v. Mukasey*, 516 F.3d 243, 249-53 (4th Cir. 2008); *Emokah v. Mukasey*, *supra*, 523 F.3d at 119.