NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 19, 2008
Decided February 24, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-2404

| | |
|---|---|
| ZUO QING XU, | Petition for Review of an Order of the |
| *Petitioner* | Board of Immigration Appeals |
| | |
| *v.* | A73 766 442 |
| | |
| ERIC H. HOLDER, Jr., | |
| *Respondent.* | |

No. 08-1595

| | |
|---|---|
| FA MEI LIU, | Petition for Review of an Order of the |
| *Petitioner* | Board of Immigration Appeals |
| | |
| *v.* | A72-373-517 |
| | |
| ERIC H. HOLDER, Jr., | |
| *Respondent.* | |

No. 08-1131

QIU HONG ZHANG,                                  Petition for Review of an Order of the
    *Petitioner*                                    Board of Immigration Appeals

    *v.*                                             A78 015 208

ERIC H. HOLDER, Jr.,
    *Respondent.*

## ORDER

This order consolidates three appeals from Chinese asylum petitioners whose cases raise similar legal and factual issues. Three Fujian residents—Zuo Qing Xu, Fa Mei Liu, and Qiu Hong Zhang—all had their applications for asylum in the United States either denied or withdrawn. All three moved to reopen their applications, asserting that if they were returned to China they would face involuntary sterilization under its family-planning laws because their family now included, or would soon include, a second child. All three, however, filed their petitions after the 90-day deadline, thus requiring them to show "material" evidence of worsening conditions in China that "was not available and would not have been discovered or presented at the previous proceeding." *See* 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.2(c)(3)(ii); *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2006); *Selimi v. Ashcroft*, 360 F.3d 736, 739 (7th Cir. 2004). In each of the three cases, the Board of Immigration Appeals (BIA) determined that the petitioners had not shown worsening conditions. Their petitions for review essentially maintain that the BIA failed to adequately consider their evidence of changed country conditions. But under *Kucana v. Mukasey*, 533 F.3d 534 (7th Cir. 2008), we lack jurisdiction to review the BIA's discretionary determination that conditions have or have not changed. *See Huang v. Mukasey*, 534 F.3d 618, 620-21 (7th Cir. 2008). As we said in *Huang*, "[t]he facts that the Board finds, and the reasons that it gives, en route to exercising its discretion to grant or deny a petition to reopen a removal proceeding, and the discretionary decision itself, cannot be reexamined by a court." *Id.* at 620. Thus, we do not review the weight the BIA chooses to place on country reports, provincial regulations, and unauthenticated government documents. *Id.* at 620-21.

We can review the BIA's decision regarding a motion to reopen for an error of law, that is, if the BIA misinterprets a statute, regulation, or constitutional provision, misreads its own precedent, uses an incorrect legal standard, or completely ignores the evidence presented to it. *See Huang*, 534 F.3d at 620. To the extent that the three petitioners raise issues of law, we review them de novo. *See Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 443 7th Cir. 2007).

### Xu's Petition

Xu first applied for asylum in 1995, alleging that he had escaped from officials in his hometown of Baisha who threatened to send him to a labor camp for practicing Christianity. After filing two unsuccessful motions to reopen, Xu moved to reopen again in 2007, arguing that the Chinese government had stepped up enforcement of its family-planning policies, which, he insisted, he and his wife violated when she became pregnant with their second child. His motion appended more than 20 documents that set forth background information on China's family-planning policies, including the Department of State's 2006 report *China: Country Reports on Human Rights Practices* (2006 Report). He also submitted two other relevant documents. One, a copy of an English translation of an unauthenticated letter purportedly sent by the "Baisha Villager's Committee," informs Xu that citizens with two children will be targeted for sterilization and that the government would count children born in the United States for purposes of the family-planning policy if registered in China. The other document, a translation of a statement purportedly from Xu's mother, identified two people whom she said had been punished for violating the family-planning policy.

The BIA concluded that Xu's wife's pregnancy and the eventual birth of their child reflected changes in personal circumstances, and not the change in country conditions that Xu had to show to reopen his tardy appeal. In reaching this conclusion, the BIA noted that it doubted the reliability of the letter from the Baisha Villager's Committee. It also noted that the mother's statement did not mention forced procedures, that Xu presented no evidence to support the allegations in the statement, and that he did not explain why he provided a copy that did not bear an original signature. The BIA listed Xu's numerous background materials, but noted that many of them had been found to be unpersuasive in previous decisions including *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007), and *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007).

On petition for review, Xu first argues that the BIA's decision to deny his motion was irrational. He contends that the BIA failed to consider his background information, which he believes corroborates that enforcement of the family-planning policies in China and Fujian remains unchanged. Xu's argument, however, does not raise an issue of law, and thus we have no jurisdiction to review it. The BIA may not completely ignore Xu's evidence, *see Huang*, 534 F.3d at 620, but here the BIA recited Xu's voluminous background materials, and was unpersuaded that conditions in Fujian have changed.

Xu also argues that *In re J-W-S-*—one of the opinions that the BIA cited to support its finding that conditions in Fujian had not changed—misrepresented conditions in Fujian, as represented in the Department of State's *China Profile of Asylum Claims and Country Conditions* 2007 (2007 Report). Xu contends that the 2007 Report actually shows that children born overseas to Chinese parents who return to China *are* counted for purposes of

the family-planning policies. Xu does not explain why this argument raises an issue of law. Regardless, *In re J-W-S-* did not misrepresent the 2007 Report. The 2007 Report states that Fujian does not count children born overseas for family-planning purposes unless the children are registered as permanent residents. *See* ¶ 112. The Report also suggests that parents who do register their children usually face only modest economic consequences. *See* ¶ *113*. Based on this information, the BIA here was well within its discretion to decide that conditions in China remain unchanged.

Xu next argues that the BIA erroneously determined that he is not qualified for either asylum or withholding of removal. The BIA, however, could not address these issues so long as Xu failed to show that conditions in China had worsened. *See Zhao*, 440 F.3d at 407.

Xu also appears to contend that our ruling in *Lin v. Mukasey*, 532 F.3d 596, 596-97 (7th Cir. 2008), confirms that country conditions in China and Fujian have worsened since its implementation of a new family planning law in 2002. In *Lin* we held that evidence that China's one-child policy was enforced more strictly in Fujian than at the time of her original removal proceedings constituted evidence of changed country conditions warranting reopening of the removal order. But in *Lin,* the BIA credited the petitioner's evidence, which included a similar villager committee's letter whose authenticity was not disputed. The evidence also included favorable language from the 2006 Report which pronounced more definitively that sterilizations had occurred in Fujian. Here, however, the BIA did not credit the unauthenticated letter from the Baisha Villager Committee. It also ruled that it had considered many of Xu's documents which had been examined in earlier decisions, including *In re S-Y-G-,* and it found that they did not show a material change in Fujian's family-planning policy. Thus unlike in *Lin*, the BIA here merely weighed the evidence against Xu, a determination we do not have jurisdiction to review. *See Huang*, 534 F.3d at 620.

### Liu's Petition

Liu's first application for asylum, filed in the mid-1990s, alleged that an official in her home town of Dong Qi had beaten her because she practiced Christianity, but her second application disavowed that story and sought asylum instead based on the birth of her two children. Liu withdrew that application and in June 2000 she agreed to voluntarily depart the United States, but she never left. In June 2007 she moved to reopen her appeal. With the motion Liu included her affidavit and a translated copy of a letter from the Guantou Family Planning Office to her husband notifying him that their second child "was in excess," that Liu had to be brought to the Family Planning Office for a sterilization operation, and that he had to pay a $2000 fine. She also submitted a copy of the 2006 Report and documents from the Changle City Family Planning Board, and the Fuzhou City

Administration on Family Planning, advising that every child born to a Chinese national living in China would be counted for purposes of the family-planning policy.

The IJ concluded that Liu's motion was tardy, and that she had not shown changed country conditions based on evidence unavailable at her previous proceeding. The IJ found unpersuasive the documents from the Changle City and Fuzhou City Administrations on Family Planning whose validity was disputed by the 2007 Report as well as the BIA's decision in *In re J-W-S-*. The IJ also chose not to credit the copy of the letter from the Guantou Family Planning Office because it was unauthenticated. The BIA affirmed the IJ's decision. In doing so, it questioned the reliability of the "poor photocopy" of the Guantou letter as well as Liu's interpretation of the letter as proving that the Chinese government would forcibly sterilize her. The BIA also stated that any fine Liu had to face did not amount to persecution because moderate fines are the enforcement mode for population control in China.

In her petition for review, Liu argues that the BIA abused its discretion by finding that the documents from the Changle and Fuzhou City Administrations on Family Planning did not show changed conditions for Chinese citizens who return to Fujian with children born abroad. She observes that in *Guo v. Gonzales*, 463 F.3d 109, 115 (2d Cir. 2006), the Second Circuit vacated the dismissal of a motion to reopen because the BIA failed to consider these very same documents. But unlike *Guo*, the IJ here considered both documents, and simply credited other background materials showing that conditions had not changed. Taken at their face value, these documents could be very compelling, but we cannot review the way in which the IJ chooses to weigh the evidence. *See Huang*, 534 F.3d at 620-21.

Liu also insists that she demonstrated changed country conditions by introducing the letter from the Guantou Family Planning Office suggesting that she would be forcibly sterilized. But here again both the IJ and the BIA found the letter unreliable—the IJ because it was unauthenticated, the BIA because it was a poor photocopy. We cannot review the weight the BIA chooses to give unauthenticated documents. *See Huang*, 534 F.3d at 620-21.

### Zhang's Petition

Zhang's first application for asylum, filed in 2002 and denied by the BIA in 2005, alleged that she fled her home town of Min An after tussling with a government official who discovered her sheltering a cousin who faced an involuntary abortion. In April 2007 Zhang moved to reopen her proceedings and requested permission to file a successive application for asylum. She submitted background materials that, she insists, show that she would be sterilized and fined if she returned to China because she was carrying a second

child.  She also claimed to be an active member of the Chinese Democratic Party (CDP), a group that promotes democracy in China.  To substantiate the danger of the work she was doing on behalf of the CDP, she also submitted documents describing the Chinese government's arrest of many CDP members as well as authors of online materials it found subversive.

As with the other two petitioners, the BIA concluded that Zhang had not shown any change in country conditions based on evidence that was not available at her previous hearing.  The BIA determined that the upcoming birth of her second child, and her participation in the CDP, were changes in personal circumstances, not changes in country conditions.  The BIA noted that she could have submitted most of her documents regarding the family-planning policies with her previous application, and that even those that were new did not demonstrate that conditions in China had worsened.  Nor did the BIA find that Zhang's material on the Chinese government's persecution of members of the CDP was something new, especially since the State Department had been reporting harsh persecution of CDP members as early as 2002.  *See China: Reports on Human Rights Practices-2002* § 1(d) (Mar. 31, 2003).

In her petition for review that she filed a few days before we issued *Kucana,* Zhang argues that the BIA did not adequately consider her evidence, such as the articles confirming the Chinese government's recent arrest of CDP members and intensified suppression of political dissenters who posted articles on the internet.  This argument does not raise any potential issues of law, and is thus beyond our jurisdiction to review, because it asks us to reevaluate the weight the BIA placed on these materials.  *See Huang*, 534 F.3d at 620-21.  The BIA was well within its discretion to determine, based on information from the Department of State, that the extent of the persecution of the CDP remained unchanged between the time of her original asylum application and the time she submitted her motion to reopen.

Zhang does make a couple of arguments that conceivably raise issues of law, but each is farfetched.  She argues, for instance, that the BIA abused its discretion by failing to consider whether she was entitled to asylum under the Convention Against Torture (CAT), but the BIA was not obligated to address any argument under the CAT because Zhang failed to show a change of conditions in China.  *See Zhao*, 440 F.3d at 407.  Zhang also argues that the BIA erroneously failed to consider her request to file a successive application for asylum based on a change in personal circumstances (the conception of her second child).  But in *Chen v. Gonzales*, 498 F.3d 758, 759-60 (7th Cir. 2007), we specifically held that a petitioner is precluded from filing a successive asylum application based on a change in personal circumstances more than 90 days after a final order of removal.

We do not question a petitioner's ability to obtain asylum based on a legitimate fear of involuntary sterilization.  *See, e.g.*, 8 U.S.C. § 1101(a)(42)(B); *Chen v. Gonzales*, 489 F.3d 861 (7th Cir. 2007); *Zhang v. Gonzales*, 434 F.3d 993, 995 (7th Cir. 2006).  But we cannot review arguments that ask us to reconsider the credibility of the evidence presented in a motion to reopen.  *See Huang*, 534 F.3d at 620-21.  Accordingly, we DISMISS all three petitions.