In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1698

PING ZHENG,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A078-746-413

ARGUED OCTOBER 22, 2012—DECIDED NOVEMBER 27, 2012

Before BAUER and ROVNER, *Circuit Judges*, and RANDA,
*District Judge.*[*]

RANDA, *District Judge*. After entering this country ille-
gally in 2001, Ping Zheng ("Zheng") was found removable
by an immigration judge ("IJ") in 2004. The Board of

_____

[*] The Honorable Rudolph T. Randa, United States Court for
the Eastern District of Wisconsin, sitting by designation.

Immigration Appeals (the "Board") affirmed, and this court denied Zheng's petition for review. *Zheng v. Gonzales*, 189 F. App'x 564 (7th Cir. 2006). Now before the court is Zheng's petition for review of the Board's decision denying her motion to reopen. For the reasons that follow, Zheng's petition is denied.

## I.

Zheng was born on February 15, 1984 in Ma Wei District, Fujian Province, in the People's Republic of China. She arrived in the United States on July 27, 2001 through the United States Virgin Islands. The former Immigration and Naturalization Service issued Zheng a Notice to Appear. After two changes of venue, Zheng eventually appeared before an IJ in Chicago. Zheng filed applications for political asylum, withholding of removal, and protection under the Convention Against Torture, claiming persecution because of her practice of Falun Gong. On June 1, 2004, the IJ rejected Zheng's applications because her testimony was "rather inconsistent and almost completely unsubstantiated." Transcript of the Oral Decision of the IJ at 6. The Board affirmed without opinion. On petition for review, this court found that the IJ's adverse credibility finding lacked adequate support, but denied the petition because Zheng failed to prove that she was persecuted while in China, or that she established a reasonable possibility of future persecution. *Zheng*, 189 F. App'x at 567-68.

Thereafter, Zheng remained in the United States. On September 8, 2010, Zheng married Dianle Jiang, with

whom she has two children: Justin, born August 2, 2007, and Bryan, born April 9, 2011. On September 8, 2011, Zheng filed a motion to reopen proceedings with the Board. Zheng argued that her case should be reopened due to the birth of her two children and increased enforcement of China's family planning policy. The Department of Homeland Security opposed Zheng's motion, arguing that it was untimely and based on changed personal circumstances rather than a change in country conditions. On February 29, 2012, the Board denied Zheng's motion because her evidence was "not sufficient to establish a change in circumstances or country conditions 'arising in the country of nationality' so as to create an exception to the time and number limitations for filing a late motion to reopen to apply for asylum." Board Decision at 4. Zheng filed a timely petition for review.

## II.

A motion to reopen removal proceedings must be filed within 90 days of the entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). Zheng's motion was filed more than six years after the expiration of this time frame. However, there is no time limit if the motion to reopen is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing. § 1229a(c)(7)(C)(ii). The purpose behind limiting this

exception to changed country conditions, as opposed to changed personal conditions, is to promote finality in the immigration context. Otherwise, an alien who manages to avoid removal could "use this interval of unauthorized presence in the United States to manufacture a case for asylum." *Cheng Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007). The Supreme Court has repeatedly acknowledged the importance of finality in immigration proceedings. *See I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992) ("[m]otions for reopening of immigration proceedings are disfavored" because "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States"); *I.N.S. v. Abudu*, 485 U.S. 94, 107-08 (1988) (recognizing that a generous view towards motions to reopen would "permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts").

In this light, it should be clear that Zheng's marriage and the birth of her two children, standing alone, is insufficient to warrant reopening. Such an argument has been "vetted in this court and rejected." *Jiang v. Holder*, 639 F.3d 751, 756 (7th Cir. 2011); *see also Cheng Chen*, 498 F.3d at 760; *Joseph v. Holder*, 579 F.3d 827, 834 (7th Cir. 2009); *Liang v. Holder*, 626 F.3d 983, 988 (7th Cir. 2010). Our task is therefore limited to analyzing the Board's finding that Zheng did not present evidence of a change in country conditions sufficient to warrant reopening of removal proceedings. This decision can be upset only if the Board abused its discretion. *Pelinkovic v. Ashcroft*, 366 F.3d 532, 536 (7th Cir. 2004). Under this

standard, the court will uphold the Board's decision to deny Zheng's motion to reopen "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular group or race." *Mansour v. I.N.S.*, 230 F.3d 902, 907 (7th Cir. 2000).

## III.

The focus of Zheng's motion is China's "one-child" family planning policy. Zheng argues that she will be subject to forced sterilization and severe fines if she returns to China, even though her two children are foreign-born. An immigrant who has a well-founded fear that he or she will be forced to undergo involuntary sterilization, or will be subject to persecution for failure to undergo such a procedure or for resistance to a coercive population program, meets the definition of a "refugee" and may be eligible for asylum. 8 U.S.C. § 1101(a)(42).

In rejecting Zheng's motion to reopen, the Board cited to the State Department's 2007 Country Profile. This document provides that "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad." Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 29 (May 2007).

According to the State Department, central govern-
ment policy prohibits the use of physical coercion
to compel persons to submit to abortion or steriliza-
tion. Although acknowledging that there were "re-
portedly" forced sterilizations in Fujian in 2006, the
State Department observes that Consulate General
officials visiting Fujian have found that coercion
through public and other pressure has been used,
but they did not find any cases of physical force
employed in connection with abortion or sterilization.

*Matter of H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 214 (BIA
2010) (citing 2007 Profile at 24, 26).

Zheng tried to undermine the conclusions of the 2007
Profile by offering the expert opinion of Dr. Flora Sapio.
According to Dr. Sapio, the 2007 Profile is "seriously
deficient" in its methodology. (Administrative Record
("A.R.") 154). "The lack of transparency in the methods
used to research the 2007 Report puts to question
the reliability of information therein contained. The
existence of omissions undermines its credibility and
usefulness." *Id*. Moreover, Dr. Sapio cites sources from
Congress and the U.S. Department of State which
confirm that the "practice of forced abortion and steriliza-
tion still takes place." (A.R. 174). Contrary to Zheng's
argument in her petition for review, the Board did not
reject this evidence out of hand, nor did it question the
expert credentials of Dr. Sapio. Rather, the Board simply
found that "Dr. Sapio's critique of the 2007 State Depart-
ment Profile on China does not persuade us that the
Profile is unreliable." Board Decision at 3. Dr. Sapio herself

admits that she "does not purport to provide conclusive answers to specific human rights issues, or to address the claims raised by individual asylum seekers." (A.R. 155). She even concedes that there is "no univocal consensus on whether forced abortions and sterilizations are still used to implement the family planning policy. Widely different opinions exist. All of them rest on the available evidence, which is neither conclusive nor comprehensive." (A.R. 168). Accordingly, the Board did not abuse its discretion in adhering to the conclusions in the 2007 Profile. State Department reports are not "Holy Writ," *Galina v. I.N.S.*, 213 F.3d 955, 959 (7th Cir. 2000), but they are still "entitled to deference." *Zheng v. Gonzales*, 409 F.3d 804, 811 (7th Cir. 2005). "State Department reports on country conditions . . . are highly probative evidence and are usually the best source of information on conditions in foreign nations. The reports are accorded 'special weight,' because they are based on the collective expertise and experience of the Department of State, which 'has diplomatic and consular representatives throughout the world.'" *Matter of H-L-H-*, 25 I. & N. Dec. at 213 (internal citations omitted).

Aside from the opinion and report of Dr. Sapio, Zheng also provided portions of the 2009 and 2010 Annual Reports of the Congressional-Executive Commission on China ("CECC"), a body created by Congress with the legislative mandate to monitor human rights and the development of law in China. The CECC's 2009 Report states that "[l]ocal governments have in some cases stepped up efforts to impose penalties and fines against couples who give birth to an unauthorized child," finding

that local officials in Fujian Province "issued a circular ordering officials to seek court authorization to carry out 'coercive measures' when family planning violators fail to pay fines." (A.R. 136-37). In February 2009, "officials in Anxi county, Fujian Province, initiated a five-week campaign of 'concentrated service activities' that designated the 'implementation of abortion remedial measures' among its five 'primary tasks.'" (A.R. 139). And in June 2009, "the Wuyishian county government in Fujian published village family planning regulations that stipulate the following: 'In emergency situations when pregnancies violate family planning policies, report the matter to the village committee and promptly carry out remedial measures (abortion).'" (A.R. 140). Similarly, the 2010 Report indicates that "authorities across a wide range of Chinese localities launched population planning enforcement campaigns— often dubbed 'spring family planning service activities'—that employed coercive measures to terminate 'out of plan' pregnancies." (A.R. 120).

This evidence is insufficient to demonstrate a change in country conditions. The "one-child policy" is more than thirty years old, so Zheng cannot prevail without showing that "China's enforcement of the policy had become more stringent in her province since her last hearing." *Liang*, 626 F.3d at 989. Zheng cites reports from prior to her hearing which characterized enforcement efforts in Fujian Province as "lax" or "uneven." *Matter of J-W-S-*, 24 I. & N. Dec. 185, 193 (BIA 2007) (citing Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and*

*Country Conditions* 20, 25 (Apr. 14, 1998)). The initiation of family planning campaigns in Fujian Province is not inconsistent with the concept of "uneven" enforcement. If anything, the idea of a targeted, temporary campaign suggests uneven enforcement in the first instance. As the Board has explained, a "new report or a new law is not evidence of changed conditions without convincing evidence that the prior version of the law was different, *or was differently enforced*, in some relevant and material way." *Matter of S-Y-G-*, 24 I. & N. Dec. 247, 257 (BIA 2007) (emphasis added). Zheng failed to demonstrate that the policy is enforced differently now than when the petitioner was ordered removed. *Lin v. Mukasey*, 532 F.3d 596, 596 (7th Cir. 2008). Therefore, the Board rightly concluded that Zheng's petition was based on a change in personal circumstances, not a change in country conditions.

Aside from the issue of changed country conditions, the Board also found that Zheng's evidence was "not sufficient to demonstrate that [Zheng] will be subjected to sterilization." Board Decision at 3. In other words, even assuming that Zheng's evidence demonstrated a change in country conditions from the time of her initial hearing, Zheng failed to show a "reasonable likelihood" that she would be eligible for asylum if proceedings were reopened. *Kay v. Ashcroft*, 387 F.3d 664, 674 (7th Cir. 2004). "The Board is required to evaluate whether the alleged changed circumstances are 'material' to an applicant's request for asylum. This in turn invites the Board to determine whether these changes provide the applicant with a well-founded fear of persecution."

*Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011). The Board did not abuse its discretion in arriving at this conclusion.

The Board found that Zheng did not show that the documents and regulations she provided from places other than Zheng's home village (Xi Bian Village), town (Ting Jian Town) and city (Fuzhou City) applied to her. Board Decision at 3. Zheng argues that this is unfair because the State Department Profile also lacks information that is specific to Zheng's home village. However, the "shortcomings of State Department reports" are considered "'especially germane' in situations in which the burden of persuasion has shifted to the government." *Lin v. Holder*, 620 F.3d 807, 811 (7th Cir. 2010) (quoting *Galina v. I.N.S.*, 213 F.3d 955, 959 (7th Cir. 2010). In Zheng's case, the burden never shifted to the government. Instead, it was Zheng's burden to establish either "past persecution" or that her "subjective fears of sterilization were objectively reasonable." *Id.* Therefore, it was not an abuse of discretion for the Board to fall back on the information in the State Department Profile when denying Zheng's petition, and the Board properly discredited Zheng's generalized evidence to the contrary. *Chen v. Gonzales*, 489 F.3d 861, 862 (7th Cir. 2007) ("affidavits relating personal experiences or tales about sterilizations in Fujian would not establish that a person in [petitioner's] position faces a material risk that this would happen to her. To determine whether an alien faces persecution in a foreign land, the agency must separate normal from exceptional events").

## IV.

Because we find that the Board's denial of Zheng's motion to reopen was not an abuse of discretion, the petition for review is DENIED.